**Ignacio Joaquin MARTINEZ, USN, ETN2, 456–88–4468, Plaintiff,**

**v.**

**Harold BROWN, Secretary of Defense, et al., Defendants.**

**No. C 77–2523 CFP.**

United States District Court, N. D. California.

Feb. 28, 1978.

John Vaisey, San Francisco, Cal., for plaintiff.

Patrick Ramirez S. Bupara, Asst. U. S. Atty., San Francisco, Cal., for defendants.

## MEMORANDUM OPINION AND ORDER GRANTING PRELIMINARY INJUNCTION

POOLE, District Judge.

Plaintiff's application for a preliminary injunction came on for hearing on November 30, 1977. Having heard oral argument, and considered the records on file herein, the Court concludes that the preliminary injunction should issue.

The plaintiff entered active service with the United States Navy on January 17, 1972, and was scheduled to complete his enlistment on January 17, 1978. On November 3, 1977, he received notification from the Chief of Naval Personnel that he was being given a less than honorable discharge on account of homosexual conduct, and that he would be coded as ineligible for reenlistment. This action was filed on November 8, 1977, in order to obtain injunctive relief against the pending discharge.

The events preceding the notification of discharge are as follows. In November of 1976, after receiving an undocumented complaint from one of the plaintiff's shipmates, the Naval Investigative Service ("NIS") began an investigation to determine whether plaintiff was a homosexual. Upon conclusion of the investigation, an Administrative Discharge Board was convened to consider its results. The first three witnesses before the board testified to various instances of homosexual conduct involving the plaintiff. The first witness, a Petty Officer Murray, detailed an event in November of 1976 when he and plaintiff were in a Hong Kong bar. According to him, a British Seaman suddenly became belligerent, threatening violence against the plaintiff. When Murray intervened and inquired into the cause of the dispute, the British serviceman accused plaintiff of making overtures in an endeavor to "pick him up." The second witness, a Lloyd Shingleton, narrated that at a party which he and the plaintiff had attended one evening in September, 1976, plaintiff "brushed" against his leg three or four times. Later that night, when the group of sailors was asleep on the floor in the house, he saw plaintiff in close proximity to another sailor and with his arm across the other's back. The third witness, Petty Officer Timothy Lazarus, was the sailor in the above incident described by Lloyd Shin-

gleton. Lazarus recalled waking up on the floor during the evening and finding the plaintiff asleep next to him, holding his hand. He pushed plaintiff away from him and fell asleep again.

In his own behalf, plaintiff introduced into evidence the report of a Navy psychiatrist who had conducted a clinical interview with him in December of 1976. The report's conclusion was that the psychiatrist did "not believe that this man [has] ever had a homosexual intent or involvement," and that he recommended investigation into possible motivations of those who had brought about the complaints against plaintiff.

Five witnesses testified to their long acquaintance with plaintiff in the Navy, his heterosexual relationships, and his lack of homosexual tendencies. The final witness was the plaintiff himself. He denied the implications of homosexuality on the occasions described by Murray, Shingleton and Lazarus. He volunteered that he had been the victim of a homosexual advance of another when he was seven. He also described a homosexual incident in 1973 while he was in the service. According to plaintiff, he and another petty officer to whom he was greatly attached had attended a party. At the other man's suggestion, plaintiff went with him to sit in the latter's Volkswagen. Plaintiff testified that as he was entering the vehicle, the other man unexpectedly unzipped plaintiff's pants and fondled his genitals. Plaintiff said that when he recovered from surprise and shock, he terminated the contact.

At the conclusion of the hearing, two of the three members of the Discharge Board found plaintiff not guilty of homosexual involvement, and recommended his retention in the Navy. The third Board member dissented, pointing out that plaintiff had admitted involvement in at least one homosexual incident, and recommended that he be separated from the Naval Service. The Board's convening officer, the Commanding Officer of the Naval Facility at Subic Bay, disapproved the recommendation of the Discharge Board, and recommended discharge because of plaintiff's "admitted involvement in a homosexual act." Following the prescribed review, the Chief of Naval Personnel concurred in the Commanding Officer's recommendations and ordered that plaintiff be separated from the service by a general discharge. The decision was subsequently approved by the Assistant Secretary of the Navy, and plaintiff was notified of his impending discharge under conditions barring his reenlistment.

Plaintiff seeks a preliminary injunction barring the Navy from discharging him with less than an honorable discharge, and from coding him as ineligible for reenlistment. Although the enlistment term has technically expired, the Navy has agreed to extend his original enlistment during the pendency of this action. Plaintiff has applied for reenlistment, but the Navy has similarly withheld processing until the Court's decision.

The Navy regulation under which plaintiff was processed for discharge states in relevant part:

"1. Members may be separated by reason of misconduct with an undesirable discharge, unless the particular circumstances in a given case warrant a General or an Honorable discharge. A discharge by reason of misconduct may be executed only when directed or authorized by the Chief of Naval Personnel. Members may be recommended for discharge by reason of misconduct for:

. . . . .

"b. Homosexual acts while a member of the naval service, sexual perversion, including but not limited to lewd and lascivious acts; sodomy; indecent exposure; indecent acts with or indecent assault upon a child; or other indecent acts or offenses. *Processing for discharge is mandatory.*" (Emphasis added).

Bureau of Naval Personnel Manual [BUPERSMAN], Section 3420185–1.b)

This regulation is supplemented by Instruction 1900.9A issued by the Secretary of the Navy, and entitled "Policy for the Separa-

tion of Members of the Naval Service by Reason of Homosexuality." In particular, paragraphs 4.a and 5.b of Instruction 1900.-9A state the following:

"4. Policy. The following policy is prescribed:

a. General. Members involved in homosexuality are military liabilities who cannot be tolerated in a military organization. In developing and documenting cases involving homosexual conduct, commanding officers should be keenly aware that members involved in homosexual acts are security and reliability risks who discredit themselves and the naval service by their homosexual conduct. *Their prompt separation is essential.* At the same time, every safeguard must be taken to insure against unjust action that will stigmatize an innocent person.

"5. Action. The following action is directed:

. . . . . .

"b. Disposition

(1) Dismissal of Matter. If, upon completion of the investigation outlined above, the commanding officer finds that the information received by him regarding homosexual conduct is unfounded in fact or that it stems from erroneous or false sources, he may conclude all action on the case.

(2) Referral to Trial by Court-Martial. In those cases where the investigation reveals evidence of aggravated homosexual conduct such as threat of bodily harm, acts with minors under 16 years of age, assault, or in any case deemed appropriate because of special circumstances, the commanding officer should consider referring the case to an appropriate court martial.

(3) Administrative Separation. *If action is not taken under subparagraph (1) or (2) above, the commanding officer should institute action with a view toward administrative separation."* (Emphasis supplied).

Plaintiff bases his application for injunctive relief on two grounds. First, he argues that the evidence contained in the administrative record is insufficient to support the finding of homosexual conduct. He also contends that BUPERSMAN Section 3420185 and SECNAV Instruction 1900.9A are arbitrary and capricious as applied to plaintiff, and violate his right to due process of law under the Fifth Amendment.

*Exhaustion of Administrative Remedies*

■ The defendant contends that plaintiff has failed to exhaust his administrative remedies, and is therefore barred from seeking relief in this Court. These remedies consist of appeal to the Board for Correction of Naval Records, which provides either pre-discharge or post-discharge review, or to the Navy Discharge Review Board, which provides exclusively post-discharge review. See 10 U.S.C. §§ 1552, 1553, and 32 C.F.R. §§ 723, 724. It is generally held that failure to exhaust these administrative remedies precludes a plaintiff from seeking judicial review of a discharge. *Champagne v. Schlesinger,* 506 F.2d 979 (7th Cir. 1974); *Hodges v. Callaway,* 499 F.2d 417 (5th Cir. 1974); *Pickell v. Reed,* 446 F.2d 898 (9th Cir. 1971).

However, the Ninth Circuit has recognized two exceptions to the exhaustion requirement in cases involving military discharges. *Schwartz v. Covington,* 341 F.2d 537 (9th Cir. 1965), held that a District Court may enjoin an undesirable military discharge pending administrative review where the plaintiff would be irreparably injured and stigmatized by the discharge, and where the evidence supporting the discharge is so insubstantial that plaintiff is likely to ultimately prevail on the merits of his claim.

■ It is undoubtedly true in this case that the plaintiff would be stigmatized by a discharge on the ground of homosexuality. However, the Court does not find that the evidence presented on the question of plaintiff's homosexuality was so insubstantial as to warrant the conclusion that he would certainly prevail upon judicial review of his discharge. The Judicial function on review-

ing the Service's administrative determinations is not that of reweighing conflicting evidence which was presented at the hearing before the Discharge Board, and which was subject to reevaluation by the Chief of Naval Personnel and by the Office of the Secretary of the Navy. Reasonable persons might draw different conclusions from the evidence contained in the administrative record. However, a court will reverse a military discharge order only upon a showing that the action was arbitrary or capricious, or was unsupported by substantial evidence. *Hodges v. Callaway*, 499 F.2d 417 (5th Cir. 1974); *Peppers v. United States Army*, 479 F.2d 79 (4th Cir. 1973); *Sanford v. United States*, 399 F.2d 693 (9th Cir. 1968). The Court cannot conclude that the evidence before the Secretary was unsubstantial and hence that there is insufficient support for the finding of homosexual conduct. This, therefore, is not a proper case under *Schwartz v. Covington, supra*, for enjoining plaintiff's discharge until exhaustion of his administrative appeals to the Board for Correction of Naval Records or to the Navy Discharge Review Board.

However, a second exception to the exhaustion requirement was stated by the Ninth Circuit in *Downen v. Warner*, 481 F.2d 642 (9th Cir. 1973). That case involved a Marine Corps officer whose suit directly challenged the constitutionality of the regulation under which she had been discharged. The Court of Appeals held that failure to exhaust administrative remedies is not always an absolute bar to judicial consideration, particularly where a claim is asserted upon a constitutional right.

 A recent decision of this Court has applied the *Downen* rationale to a case almost identical to the instant action. In *Saal v. Middendorf*, 427 F.Supp. 192 (1977), a discharge board had recommended a general discharge for homosexuality under the same BUPERSMAN § 3420185 Regulation which is involved in this action. District Judge Schwarzer held that exhaustion was unnecessary for two reasons. First, the regulation makes processing for discharge upon a finding of homosexuality mandato-

ry, and therefore exhaustion of administrative remedies would be futile. Second, since a constitutional challenge to the Navy regulation was involved, *Downen* allowed the court to proceed directly to a consideration of the merits without awaiting exhaustion.

The Court concludes here that it is not required to wait for Martinez to exhaust his administrative remedies before considering his application for preliminary relief. Under the holding in *Downen* and the reasoning of *Saal, supra,* the Court should decide the constitutional issue which has been presented since it is one "singularly suited to a judicial forum and clearly inappropriate to an administrative board." *Downen, supra,* at 643.

### The Constitutional Question

The language of BUPERSMAN Section 3420185, read in conjunction with SECNAV Instruction 1900.9A, makes it clear that discharge of Navy personnel is mandatory upon a finding of homosexuality or homosexual conduct. These regulations do not provide for consideration of the suitability for military service of the person found to be involved in such conduct. Rather, they flatly presume unfitness without more, once it is concluded that the person has been involved in homosexual conduct. The Government has belatedly argued that in a literal reading of the regulations, only the *processing* for discharge is mandatory, and that they encompass further stages in which consideration is given to the individual's suitability for retention. However, although afforded an opportunity to augment the record to prove that such is the practice, the Government has failed to make any showing in support of such contention. We construe these provisions as requiring mandatory discharge in practice as well as on their face.

Furthermore, in plaintiff's case, and as far as is known, in all cases, it appears that these regulations have been applied as requiring unconditional discharge upon a finding of homosexuality. The dissenting member of the Discharge Board and plain-

tiff's Commanding Officer both so concluded. Plaintiff was given no opportunity to be heard as to his fitness for military service; nor was consideration given to the likelihood of recurrence of the claimed homosexual activity, its projected pervasiveness, or probable threat to service morale, or any other perceivable concomitant of such propensity. The record is unquestioned, and the Court finds that, as applied, the regulations require the mandatory discharge of those found to be homosexuals or to have engaged in homosexual conduct.

■ We conclude that such mandatory exclusion from military service of persons on the basis of homosexual propensity or conduct is irrational and capricious, and violates the due process rights secured to plaintiff by the Fifth Amendment. This conclusion is supported by several decisions which have held that due process requires that some nexus be shown between homosexual conduct and unsuitability for service before a person can be discharged on account of such activity. *Scott v. Macy*, 121 U.S.App.D.C. 205, 349 F.2d 182 (1965); *Norton v. Macy*, 135 U.S.App.D.C. 214, 417 F.2d 1161 (1969); *Saal v. Middendorf, supra; Society for Individual Rights v. Hampton*, 63 F.R.D. 399 (N.D.Cal.1973). The due process right attaches in this context because of the severely stigmatizing effect of a disclosure of homosexual activity, especially when coupled with an involuntary separation from military service. As the Court of Appeals stated in the *Norton* decision:

"The Government's obligation to accord due process sets at least minimal substantive limits on its prerogative to dismiss its employees: it forbids all dismissals which are arbitrary and capricious. These constitutional limits may be greater where, as here, the dismissal imposes a 'badge of infamy' disqualifying the victim from any further Federal employment, damaging his prospects for private employ, and fixing upon him the stigma of an official defamation of character. The Due Process Clause may also cut deeper into the Government's discretion where a dismissal involves an intrusion upon that ill-

defined area of privacy which is increasingly if indistinctly recognized as a foundation of several specific constitutional protections." *Norton v. Macy, supra,* 135 U.S.App.D.C. at p. 217, 417 F.2d at p. 1164.

We hold that the Government must provide a procedure for evaluating the question of fitness to serve in light of all relevant factors instead of treating the matter as subject to mandatory exclusion.

In reaching this conclusion, we do not hold that the Navy is constitutionally barred from discharging or refusing to reenlist persons on account of homosexuality, if upon factual consideration it is determined that that characteristic has a direct bearing on that individual's fitness for service. Rather, we concur with the court's statement in *Saal v. Middendorf, supra,* at 202:

"Due process requires that plaintiff's application for extension of service or reenlistment receive the same consideration as that of other Navy personnel similarly situated, without reference to policies or regulations substantially mandating exclusion or processing for discharge of persons who engage in homosexual activity."

Homosexuality may be a legitimate factor to be considered in deciding whether to discharge or deny reenlistment to this plaintiff, but it is only one factor, not the only determinant.

*Standard for Awarding Preliminary Relief*

■ Under the Ninth Circuit's decision in *William Inglis & Sons Baking Co. v. ITT Continental Baking Co., Inc.,* 526 F.2d 86 (9th Cir. 1975), an injunction may issue upon a clear showing of either (1) probable success on the merits and possible irreparable injury, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation, and a balance of hardships tipping decidedly toward the party requesting preliminary relief. These alternate tests were reaffirmed in *Aguirre v. Chula Vista Sanitary Service and Sani-Tainer, Inc.,* 542 F.2d 779 (9th Cir. 1976).

We conclude that plaintiff's application for preliminary relief satisfies the requirements of the latter test. The stigmatizing effect of a discharge for homosexuality on the plaintiff greatly outweighs any possible detriment to the Navy which may result from enjoining the plaintiff's discharge. The constitutional issues which have been raised are sufficiently serious to warrant the issuance of an injunction.

Accordingly, IT IS ORDERED that defendants are enjoined from discharging the plaintiff for homosexual conduct on the basis of any record made to date;

IT IS FURTHER ORDERED that defendants shall either grant the plaintiff's application for reenlistment, or shall grant him a full hearing on the question of his suitability for reenlistment and future service without reference to policies or regulations mandating exclusion of persons who engage in homosexual activity from the Navy.