John M. GRIEG

v.

The UNITED STATES.

No. 258–78.

United States Court of Claims.

Jan. 28, 1981.

Neil B. Kabatchnick, Washington, D. C., attorney of record, for plaintiff.

Louis R. Davis, with whom was Asst. Atty. Gen., Alice Daniel, Washington, D. C., for defendant; Lynn J. Bush, attorney of record, Washington, D. C.; Major Scott Magers, Dept. of the Army, of counsel.

Before KASHIWA, BENNETT and SMITH, Judges.

## OPINION

BENNETT, Judge:

This is a military pay case in which plaintiff seeks to have the court void an OER and then grant further relief as a result of that correction of plaintiff's military records. We conclude that it would be improper to void the OER. Therefore, we hold for defendant. In doing so, we reverse the decision of the trial judge but accept most of his findings.[1] Such findings of fact as are necessary to our decision are stated herein. This case again presents to the court important questions concerning our jurisdiction and permissible scope of review. It is on the interpretation and application of guidelines which have been laid down for the resolution of these cases that we respectfully differ with the learned trial judge. We think he has exceeded the court's authority. On the appealing facts of plaintiff's case, it is tempting to do so. But, we must be ever mindful that this is a court of limited jurisdiction.

Plaintiff entered on extended active duty on October 4, 1958, as a second lieutenant in the Army Reserve. He served on active duty thereafter continuously until November 1, 1973, reaching the rank of temporary major. He was an officer in the Regular Army almost all of this time and achieved a record noted for competent and faithful discharge of duty. He was discharged on November 1, 1973, pursuant to statute, after he was twice considered but not selected for promotion to the permanent grade of

---

1. The court rejects the trial judge's findings numbered 43(c) through 43(i), 44, 48(b) through 48(k), and his conclusion of law. The court's task in review of the record has been made unnecessarily difficult by defendant's failure to comply with our Rule 143(c) which requires that, "At the end of each exception to findings of fact, appropriate references shall be made to the parts of the record relied upon in support thereof."

major. His claim is that the promotion nonselections were due to an erroneous officer effectiveness report (OER) covering the period from November 17, 1967, to February 20, 1968. He seeks back pay, correction of his records, promotion, placement on the retired list, and ancillary relief. Plaintiff has sought and been denied administrative relief by the Army under AR 623–105 and by the Army Board for the Correction of Military Records. The board considered plaintiff's application in executive session. He was not granted a hearing until he came to the court. His suit is timely.

Plaintiff was an Infantry officer who performed two tours of duty in Vietnam, and as leader of a Special Forces team was awarded the Bronze Star Medal, among others. Thereafter, and after completing an advanced Infantry officer career course at Fort Benning, Georgia, he was assigned to the Army Arctic Test Center at Fort Greely, Alaska. There he was made a test officer in the Infantry Airborne and Individual Equipment Test Division. Lt. Col. Alfred E. Williams was his division chief. Maj. Herbert Lee Gregg was senior test officer of the division and was plaintiff's OER rater. Lt. Col. Williams was plaintiff's OER indorser.

While at Fort Greely in August 1967, plaintiff received alert orders that he was being assigned to Vietnam for a third tour there and that he was to report no later than December 28, 1967. Plaintiff's wife and infant child had accompanied him to Fort Greely. His wife was upset at the prospect of a third tour in Vietnam because she was expecting another child in December 1967. She also knew of other officers who had not been called upon to do so much duty in Vietnam and resented what she believed was unjust treatment of her husband. Plaintiff was made aware of these feelings in no uncertain terms and, agreeing with her, tendered his resignation from the Army. The resignation was not accepted because of the continuing military need for his special qualifications. However, supplemental orders were issued changing his reporting date for the Vietnam assignment to March 25, 1968. He performed

that third tour with distinction, winning two Oak Leaf Clusters for his Bronze Star.

There is no dispute about the high quality of plaintiff's service prior to receipt of the Vietnam alert notice. The OER rendered on his performance of duty from November 17, 1967, to February 20, 1968, however, contained some criticism. While praising plaintiff's superior technical competence and stating that in the rating period he had performed his assigned duties in a superior manner, the rater's comment also stated, in pertinent part:

> After the tests were completed, MAJ Grieg failed to prepare the reports of tests in the proper format or within the required time frame. When questioned about the progress that he was making on the reports, he displayed a very negative attitude.

Plaintiff's indorser, Lt. Col. Williams, added the following comments on the OER:

> MAJ Grieg was a superior officer until he received his orders to Vietnam. The last 30 days that he was assigned to this Test Division his dependability was seriously affected. He conducted two arctic service tests during the test season and gathered adequate test data. One of the test reports he wrote had to be completely rewritten by other officers of this Test Division; the other test report had to have major modifications and corrections made on it. MAJ Grieg is capable of producing superior test reports as indicated by the reports he submitted for the previous test season. During MAJ Grieg's last 30 to 45 days that he was assigned to this test division he displayed a very negative attitude toward the Army.

The rater and indorser testified at the court trial and reiterated their views as expressed on plaintiff's OER. Plaintiff's testimony denied the factual accuracy of these comments and represented that because of his prospective departure from the Test Center that he, in fact, accelerated his work and completed it in proper form and content well before his scheduled departure

date, and in sufficient time for its review by the division review board. At the trial, plaintiff's testimony was supported by that of a former subordinate, Jack C. Cook, Jr., and by Mrs. Grieg. It is a fact that the review board found with respect to one of plaintiff's reports that it should include certain additional data plaintiff had developed, and amended. it accordingly. Also, the reports were prepared in final form for distribution prior to plaintiff's departure from the Test Center.

The Army Electronics Command in a communication dated February 5, 1968, commended plaintiff's performance, referring among other things to his "great personal sacrifice" and to the "outstanding manner" in which plaintiff and his assistant cooperated to prevent delay and overcome technical difficulties. The communication concluded with the statement, "The very eminently satisfactory manner in which this mission was accomplished reflects most highly on Major Grieg's * * * capabilit[y] and * * * devotion to our nation's defense." The foregoing commendation was forwarded to plaintiff by the commanding officer of the Test Center, Col. Nabors, with a covering communication which praised plaintiff's performance and congratulated him "for a job outstandingly well done."

Plaintiff was considered but not selected for promotion to the permanent grade of major by Army selection boards that convened on January 24, 1972, and January 31, 1973. He was passed over for promotion to the temporary grade of lieutenant colonel, AUS, by a selection board that convened on September 5, 1972. Pursuant to law he was therefore discharged on November 1, 1973. On plaintiff's application he was appointed a major in the Army Reserve on October 12, 1973. The trial judge found that the principal factor in plaintiff's being passed over for promotion was the comparatively low OER that was rendered on him for the last 3 months of this tour of duty as a member of the division at the Test Center, Fort Greely, Alaska. Plaintiff received three OERs while at the Test Center. His composite score on the first one was 203.7. The second was 209.1. The third one, here in issue, was 166.0. This represented a decline of 37.7 points compared with the first OER and 43.1 points when compared with the second. The low OER was the lowest composite score on any OER for plaintiff during his entire military service. Excluding this one OER, his composite scores for his entire service averaged 202.2. The low OER was prepared after plaintiff left Fort Greely and he did not see it until 1972 when he made inquiry after being passed over for promotion in that year.

Plaintiff's first challenge to the OER for the period November 17, 1967, to February 20, 1968, was on October 5, 1973, when he sought a correction of his record under the provisions of 10 U.S.C. § 1552 (1976) and AR 15–185 by an appeal to the Army Board for the Correction of Military Records. He did not pursue this appeal immediately because, as later discussed, he first sought to exhaust other administrative relief within the Army itself. However, he amended his appeal to the board when the other avenue of relief was unsuccessful and his application was considered on October 19, 1977, by the board in executive session. By letter of November 23, 1977, plaintiff was advised that the application for correction of his records was denied. The board decision stated, in part:

DISCUSSION: From a review of the applicant's entire OER file it does appear that the OER in question [*i. e.*, for the period from 17 November 1967 to 20 February 1968] may have been the determining factor for his non-selection to the grades of Major-RA and LTC–AUS.

The board memorandum concluded with the remark that "the OER reflects a valid appraisal of the applicant's manner of performance during the period."

Plaintiff also filed, on February 7, 1974, an appeal under the provisions of AR 623–105 seeking to void the low OER. The Infantry Branch of the Army did not support the appeal. A special review board in the office of the Deputy Chief of Staff for Personnel considered the appeal and rejected it on February 27, 1974. It had before it

plaintiff's representations and his record, and considered a memorandum furnished by Lt. Col. Williams, which was abbreviated in a so-called case summary that was very derogatory. In part it stated:

b. MAJ Grieg was truly outstanding until he received word that he was to be reassigned to Viet-Nam, then he practically quit work. He spent most of time and energy attempting to get out of the Nam assignment. He spent considerable working time in telephoning DA and congressmen, and writing letters. "He flat went to pieces." Appellant told LTC Williams that he (MAJ Grieg) had a way out in that his wife would divorce him and refused to take their child; therefore, the Army would not send him to Viet-Nam. His attitude was negative.

c. With respect to appellant's test reports, they were late in submission and in such condition that they had to be worked over. In fact LTC Williams had to redo some of the testing because the data was not complete. The format wasn't the problem, it was the substantive deficiencies that appellant was faulted for, LTC Williams did not ask MAJ Grieg to redo any of the work because it would not have done any good. The rework was done by several officers including the rater and indorser.

When the trial judge considered the documentary record in the case and the testimony presented to him, he rejected everything that did not support plaintiff's claim. He found the adverse statements on the OER by the rater and indorser factually inaccurate and as indicating a "prejudicial state of mind" toward plaintiff, "evidently due to the Vietnam assignment and the plaintiff's attempt to avoid it by submitting his resignation." He found that the OER for the contested period "did not represent an accurate, objective, fair, or just evaluation of plaintiff's performance during such period." He concluded that the OER was "unfair and unjust" and "prejudicial" and that the record did not disclose any factor other than the challenged OER that might have caused plaintiff's passovers by the 1972 and 1973 permanent major selection boards. In this connection he noted the correction board's own statement that the weak OER "may have been the determining factor for his non-selection." Upon these determinations the trial judge reached this conclusion: "Therefore, *legal error* was committed when the 1972 and 1973 permanent major selection boards based their pass-overs of the plaintiff on records which contained the *unfair and unjust* OER for the period from November 17, 1967, through February 20, 1968." [Emphasis supplied.] The trial judge has recommended that the court award plaintiff back pay for active duty he would have performed had he not been illegally discharged, for back retired pay, and for the correction of his records to remove the contested OER and passovers. Promotion, of course, was correctly denied as beyond the court's jurisdiction.

The trial judge has repeatedly referred to the result in plaintiff's case before the correction board and selection boards as "unfair and unjust," *i. e.*, an "injustice" which he equates with legal error, as shown by the above quotation from his opinion. He cites just two cases in support of this proposition. *Riley v. United States*, 221 Ct.Cl. ——, ——, 608 F.2d 441, 443 (1979), and *Skinner v. United States*, 219 Ct.Cl. 322, 330–31, 594 F.2d 824, 829 (1979). Those cases do not support the proposition that the court can overturn selection boards and correction boards because something that they have done or failed to do is simply "unfair and unjust." Those were cases in which pure legal error was committed and there are many cases proclaiming our jurisdiction to correct such errors. Capt. Riley was passed over for promotion because of two OERs which were voided by a review board. The correction board refused his request to remove the passovers. This was legal error because under the statutes, 10 U.S.C. §§ 3442(c), 8442(c) (1976), an officer is entitled to be considered on a record that accurately portrays his career. The record was erroneous by the decision and admission of the Air Force itself. It was also shown that with these illegal OERs out of his file plaintiff was in the competitive zone for promo-

tion. The legal error in *Skinner* was the illegal use of command influence on the rater, arising from information the rater and indorser confessed was erroneous. This violated the same statutes as in *Riley*. The court in *Skinner* ruled:

> * * * It takes more than an unfair rating or simple injustice to merit our consideration or judicial relief. It must be an unlawful act made so by violation of statute, or regulation, or published mandatory procedure, or unauthorized act, or so unsupported by the evidence as to be a gross injustice, unlawful because of clear legal or factual error, manifest abuse of discretion, or arbitrary and capricious action amounting to bad faith or fraud, and seriously prejudicial. [Citations omitted.] [219 Ct.Cl. at 333, 594 F.2d at 830.]

The same day that *Skinner* was decided, the court *en banc* decided *Sanders v. United States*, 219 Ct.Cl. 285, 594 F.2d 804 (1979). In that case there was also plain legal error. The correction board removed certain improper OERs from Capt. Sanders' file but did not remove, as he requested, the passovers that they had occasioned. Had it done so, it was evident he would have been promoted because he was next in line for it. The court unanimously concluded that he had been discharged by reason of legal error. An officer is entitled to the pay of the position to which he was appointed until legally removed. 37 U.S.C. § 204 (1976).

The *Sanders* court did not entirely rule out the possibility that somewhere down the road in the future there might be such an error or injustice so shocking to the conscience and ignored by a correction board that evidence could show it rose to the level of legal error necessary for the court to remedy it. As yet, the court has encountered no such cases, post *Sanders* and *Skinner*. One thing is clear, the court cannot itself correct a simple injustice or direct a correction board to do so, without the correction implementing a money judgment. *Black v. United States*, Ct.Cl. No. 238–74 (order entered April 18, 1980). Correction boards have the authority by statute to remove or correct an error or injustice. 10 U.S.C. § 1552(a) (1976). The statute says: "Except when procured by fraud, a correction under this section is final and conclusive on all officers of the United States." An example of the correction of an injustice may be illustrated, for instance, where the board orders a promotion or changes the character of a soldier's discharge from dishonorable to honorable as a matter of clemency to correct a factual but not necessarily a legal error. The court cannot do this because it does not involve a monetary claim, but is equitable in nature. The court said in *Sanders*:

> * * * Once a plaintiff has sought relief from the Correction Board, such plaintiff is bound by that board's determination unless he can meet the difficult standard of proof that the Correction Board's decision was illegal because it was arbitrary, or capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which plaintiff has been seriously prejudiced, and money is due. [219 Ct.Cl. at 298, 594 F.2d at 811.]

The court also said in that case:

> * * * To recover for failure to correct an alleged injustice, such as perhaps based on gross material error of fact or an action contrary to all evidence, it must be proved that such failure was arbitrary and capricious, or in bad faith, or contrary to law, or without rational basis, seriously prejudicial to plaintiff, and with monetary consequences. In such event, the abuse of administrative discretion rises to the level of legal error which merits judicial relief. These are comparatively rare cases. [Citations omitted.] Perhaps they are infrequent because the proof must overcome the strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith. [Citations omitted.] Strong policies compel the court to allow the widest possible latitude to the armed services in their administration of personnel matters. * * * Thus, while we may

disagree with a correction board about whether or not a specific situation was unjust, we will not substitute our judgment for the board's when reasonable minds could reach differing conclusions. *Snell v. United States,* 168 Ct.Cl. 219, 227 (1964). [*Sanders,* 219 Ct.Cl. at 301–02, 594 F.2d at 813–14.]

Concurring in the *Sanders* result but writing separately, Judge Nichols, joined by Judge Smith, would not admit that there was any right to judicial review except for legal error. Claims of "injustice" were described as moral claims for clemency, but not within the court's jurisdiction to decide or to require the correction board to decide "no matter how arbitrary or capricious, in merely moral cases." 219 Ct.Cl. at 319, 594 F.2d at 823 (Nichols, J., concurring). The majority opinion acknowledged this difficulty in stating:

> Where a correction board fails to correct an injustice or a passover is challenged but a back pay claim has not arisen, plaintiff's remedies, if any, would be in the district court by mandamus, 28 U.S.C. § 1361, or declaratory judgment, 28 U.S.C. § 2201. [*Sanders,* 219 Ct.Cl. at 296 n.10, 594 F.2d at 810 n.10.]

It is unnecessary here to belabor these now well-settled rules of law and to cite or discuss the cases supporting the same, as set forth in the precedents cited above. What is necessary now is to see if plaintiff has met the strict and difficult tests of *Skinner* and *Sanders,* subsequently reaffirmed in several decisions, including the recent one of *Hary v. United States,* 223 Ct.Cl. ——, 618 F.2d 704 (1980).

We think without doubt that plaintiff has failed to meet the tests. The trial judge has not shown us that what he found to be an unjust OER amounted to legal error. He weighed the testimony of plaintiff and his wife, of plaintiff's friend and subordinate, Mr. Cook, and the evidence of the commendation of the Electronics Command and its indorsement by an officer not in the rating chain for this particular OER, compared the challenged OER with others plaintiff received, and concluded that there was substantial evidence of prejudice and error of fact so as to make an "unfair and unjust" OER into one written in legal error. He also gave weight to the speculation of the correction board that the OER "may have been the determining factor for his nonselection" to the grade of major, but he did not note that the correction board also said that the OER constituted a "valid appraisal" of plaintiff's performance of duty during the rating period which it covered. "A finding of probable error or injustice cannot be based on mere speculation." *Hary v. United States, supra,* 223 Ct.Cl. at —— n.18, 618 F.2d at 711 n.18.

The trial judge heard the evidence, evaluated plaintiff's performance, and concluded that the OER for the period in dispute did not accurately reflect plaintiff's performance. A contrary conclusion would have been equally plausible and well supported. As defendant persuasively argues, the Army Electronics Command commendation of plaintiff's work and the letter by the Test Center commander, Col. Nabors, which forwarded that commendation to the plaintiff, do not represent an evaluation of plaintiff's performance for officer effectiveness report purposes. Those personnel were not legally responsible for monitoring plaintiff's work from day to day, and making an evaluation of that work for the military.

Similarly, plaintiff's record for prior and subsequent periods cannot negate the evaluation for the OER period in dispute. The rater and indorser recorded their evaluation of plaintiff's performance for that period. These were the individuals who had the legal responsibility to rate plaintiff and who were in a position to observe his performance on a daily basis. They exercised their discretion and judgment in rendering the evaluation, and their evaluation is entitled to a presumption of correctness. *Hary v. United States, supra,* 223 Ct.Cl. at ——, 618 F.2d at 707; *Guy v. United States,* 221 Ct.Cl. ——, ——, 608 F.2d 867, 870 (1979); *Sanders v. United States, supra,* 219 Ct.Cl. at 302, 594 F.2d at 813. The rater and indorser reiterated and reaffirmed their criticism of plaintiff's performance during

the rating period in issue when they testified in this court. As the court stated in *Guy v. United States, supra,* 221 Ct.Cl. at ——, 608 F.2d at 870–71:

> * * * perfect objectivity in the rating process cannot be expected or even hoped for. The process of evaluating officers by other officers is an inherently subjective process which neither the military boards nor this court will interfere with unless there is clear and convincing evidence of factors adversely affecting the ratings which had *no business being in the rating process.* * * * [Emphasis in original.]

*See also, Hary v. United States, supra,* 223 Ct.Cl. at ——, 618 F.2d at 708. There is no evidence that such improper factors affected the challenged OER.

In addition, the trial judge seems to have approached this case as one in which he could evaluate the plaintiff's performance during the period from November 17, 1967, to February 20, 1968, and reach a conclusion based solely on the weight of evidence as he saw it. However, the Army Board for the Correction of Military Records decided that the OER in question represented a "valid appraisal" of the plaintiff's performance for the period in question. That conclusion is entitled to finality unless arbitrary, or capricious, or unsupported by the evidence. *Skinner v. United States, supra,* 219 Ct.Cl. at 332, 594 F.2d at 830. As the court stated in *Cooper v. United States,* 203 Ct.Cl. 300, 304–05 (1973):

> * * * This court cannot overturn the * * * decisions of the Army Board for the Correction of Military Records unless they are found to be arbitrary, capricious, and not based upon substantial evidence, or are contrary to applicable laws and regulations. *Dorl v. United States,* 200 Ct.Cl. 626, *cert. denied,* 414 U.S. 1032 [94 S.Ct. 461, 38 L.Ed.2d 323] (1973). This showing requires cogent and clearly convincing evidence. *Newman v. United States,* 185 Ct.Cl. 269, 276 (1968); *Stephens v. United States,* 174 Ct.Cl. 365, 372, 358 F.2d 951, 954 (1966). There is a strong presumption that the board and

the Secretary faithfully discharged their duties and the burden is upon plaintiff to prove otherwise. *Callan v. United States,* 196 Ct.Cl. 392, 450 F.2d 1121 (1971); *Biddle v. United States,* 186 Ct.Cl. 87 (1968). * * *

The trial judge does not appear to have evaluated the evidence in light of that standard of review. The failure of the trial judge to analyze the evidence within the proper scope of review deprives his recommended opinion of the presumption of correctness to which it would otherwise be entitled. In addition, the passage of years, 11 years from the performance evaluated to the date of trial in this court, weighs heavily against the plaintiff's efforts to overcome the OER. Slight variations between the evaluation 11 years ago and the rater and indorser's testimony in this court must be expected, given the lapse of time and the frailty of human memory. But, the plaintiff must establish a "misstatement of a significant hard fact," *Hary v. United States, supra,* 223 Ct.Cl. at ——, 618 F.2d at 708, or "gross material error of fact or an action contrary to all evidence," *Sanders v. United States, supra,* 219 Ct.Cl. at 301, 594 F.2d at 813, or that the decision of the correction board is "so unsupported by the evidence as to be a gross injustice," *i. e.,* clearly erroneous, *Skinner v. United States, supra,* 219 Ct.Cl. at 333, 594 F.2d at 830. Plaintiff has simply failed to meet its burden in this case in order to overcome the OER and the correction board decision.

The cold reality of the situation is that it will always be difficult to overcome the discretionary judgments and evaluations by the rater and indorser, especially many years after the performance was reported. However, this is as it should be. This court is not here to second-guess them. Further, "we will not substitute our judgment for the board's when reasonable minds could reach differing conclusions." *Sanders v. United States, supra,* 219 Ct.Cl. at 302, 594 F.2d at 814. We do not run the military services. *Orloff v. Willoughby,* 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953). The court said in *Reale v. United States,*

208 Ct.Cl. 1010, 1013, 529 F.2d 533, *cert. denied*, 429 U.S. 854, 97 S.Ct. 148, 50 L.Ed.2d 129 (1976):

> Plaintiff sees us as made into a sort of super Correction Board by Pub.L. 92–415, *supra*. We do not agree. We are given power to order correction of records, and reinstatement but only to make the relief complete as to matters within our jurisdiction, not to exercise discretion for the Service Secretaries and take over the functions of Correction Boards.

■ Any course other than the one stated would permit an officer to challenge his OERs by bringing in his self-serving testimony and that of his wife and friends not in the rating chain, to upset those OERs, and thus render the entire military promotion and rating system a farce by destroying its integrity. Show us a clear, legal error and we can cope with it. We do not have one here. There was substantial evidence to support the OER as given to plaintiff. It was not, therefore, arbitrary and capricious for the correction board not to change it. It is the rater's view that counts in the end, absent legal error. OERs are discretionary matters in which the court must be scrupulous about its intervention. *Boyd v. United States*, 207 Ct.Cl. 1, *cert. denied*, 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976). In the face of the presumption that the OER is correct because the rater is presumed to have acted in good faith, "plaintiffs must do more, to invoke court intervention, than merely allege or prove that an OER seems inaccurate, incomplete, or subjective in some sense." *Hary v. United States, supra*, 223 Ct.Cl. at —, 618 F.2d at 708. And, as further stated in the latter case, "merely because the Correction Board voids an OER, it is not automatically obligated to void any passover emanating from a selection board that had a defective OER before it. The officer must show that the presence of the defective OER made his whole record before the selection board something less than 'substantially complete and fair.'" Here, unlike in *Skinner*, for instance, there is no concession by the rater or indorser that the rating was factually wrong. Also, this case

is unlike *Sanders* because in that case the correction board had voided four OERs. Further, there is no showing of plaintiff's relative standing to others waiting in line for promotion or at what point there was a "cutoff." The best we have is the correction board's speculation that the challenged OER *might* have made a difference. But, since it stated also that the OER was correct we cannot give plaintiff back pay. Except for an inference of potential prejudice by the rater, not supported by this record, the fact that this fine officer had better ratings before and after the challenged OER is of no legal moment nor of probative value as to the rating period covered by the one OER with which he is dissatisfied. A clear nexus between the OER and plaintiff's serious possibility of promotion is lacking in the record. *Cf. Guy v. United States, supra.* The statistics supplied in the findings of the trial judge show that several hundred officers were considered but not selected by the permanent major selection boards that considered plaintiff for promotion on January 24, 1972, and January 31, 1973, as follows:

|  | *1972* | *1973* |
|---|---|---|
| Number considered | 1917 | 1922 |
| Number selected | 1652 | 1480 |
| Percent selected | 86.2 | 77.0 |
| "Fresh Zone" considered * | 1721 | 1774 |
| "Fresh Zone" selected | 1560 | 1457 |
| Percent "Fresh Zone" selected | 90.6 | 82.1 |

\* Officers considered for the first time.

The statistics for the September 5, 1972, temporary lieutenant colonel selection board that considered, but did not select, plaintiff are even more striking:

| | |
|---|---|
| Number considered | 1953 |
| Number selected | 736 |
| Percent selected | 69.9 |
| "Fresh Zone" considered | 850 |
| "Fresh Zone" selected | 687 |
| Percent "Fresh Zone" selected | 80.8 |

■ We think plaintiff can derive small comfort from these statistics. Plaintiff's main argument is that since the trial judge saw the witnesses and had a chance to judge their credibility, and the correction board had no hearing, the presumption in favor of the decision and findings of the

trial judge has to be decisive. Indeed, it would be if he found a legal error. But, his conclusion that what he believed to be an "unfair and unjust" OER is necessarily legal error is not supported by the statutes, regulations, or prevailing case law. In his zeal to do justice as he saw it, he innocently went beyond the permissible scope of review by acting as a correction board and by substituting his judgment of plaintiff's performance of duty for that of the plaintiff's rating and indorsing officers, reflected on the OER, which constituted substantial evidence before the board, even though some aspects thereof might be subject to differences of opinion between reasonable minds.[2] Under the law, as set forth in our cases, this is not good enough to constitute legal error which would permit the court to overturn the administrative determination, as plaintiff here requests.

Plaintiff argued this case to the trial judge as if this court were sitting as a super correction board with authority to correct what are merely alleged inaccuracies in a challenged OER. We read the trial judge's opinion as adopting that view. The trial judge said that:

> A military officer is legally entitled to be considered by a selection board for promotion on the basis of a record that fairly portrays the career of the officer in the military service.

In this he was correct. The law provides that appointments to higher grades are to be made on a "fair and equitable basis," 10 U.S.C. §§ 3442(c), 8442(c) (1976). However, this laudable, legal standard does not automatically convert every factual error to legal error. The plaintiff's claim in this case relies upon proof that the challenged OER was materially in error so as to warrant judicial relief. But, as we have shown, reasonable minds can differ on the evidence here. Where that is so, we can go no further. We have analyzed the case under

the proper standards for granting relief for factual error and conclude that the evidence was insufficient to overturn the presumptions which support the OER in this case. Therefore, the petition is dismissed.

---

**2.** When the trial judge drafted his recommended opinion, he had the benefit of the plaintiff's 276-page proposed findings of fact and brief. However, he did not have before him any proposed findings, brief, or response from the defendant. See the court's previous order

in this case. *Grieg v. United States,* Ct.Cl. No. 258–78 (order entered May 9, 1980). Thus, the one-sidedness of the record before the trial judge may have contributed to the outcome below.