**Jesus Roberto AYALA, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 85 Civ. 3756 (RWS).**

United States District Court, S.D. New York.

Dec. 4, 1985.

Jesus R. Ayala, Bronx, N.Y., pro se.

Rudolph W. Giuliani, U.S. Atty. S.D.N.Y. (Harriet L. Goldberg, Asst. U.S. Atty., New York City, of counsel), for U.S.

SWEET, District Judge.

Defendant United States of America (the "government") has moved for an order pursuant to Federal Rule of Civil Procedure 12(b)(1) dismissing the complaint of plaintiff Jesus Roberto Ayala ("Ayala") for lack of subject matter jurisdiction and for failure to exhaust administrative remedies or, in the alternative, for an order granting summary judgment pursuant to Rule 56(b). Ayala, proceeding *pro se*, claims that certain actions taken by his Marine Corps superiors were racially motivated, resulting in his transfer from the Selected Marine Corps Reserves to the Individual Ready

Reserves. For the reasons set forth below, the court grants the motion to dismiss for lack of subject matter jurisdiction and finds that Ayala has failed to exhaust the available administrative remedies.

Ayala, a gunnery sergeant in the United States Marine Corps Reserves, brings this action seeking retroactive pay and promotion, medical care, and pension benefits denied to him because of a transfer from the Selected Marine Corps Reserves to the Individual Ready Reserves in April, 1983. At the time of Ayala's transfer to the Individual Ready Reserves, he had completed sixteen creditable years of service towards the necessary twenty-year minimum for retirement from the reserves. Ayala contends that his transfer was racially motivated because he is Hispanic, and he seeks damages totalling $17,000,000.00.

In April, 1983 Ayala sent a letter to the "Commanding General USMC" requesting an interview to discuss grievances and alleging discrimination within his reserve unit. An investigation was commenced pursuant to this complaint which culminated in a report on October 21, 1983, which concluded that Ayala's transfer was not in violation of applicable regulations and that no discrimination was present in Ayala's unit. Ayala also contacted his Congressman for assistance and received a letter adopting the conclusions of the military investigation.

Because Ayala is proceeding *pro se*, this court will be solicitious in determining whether his complaint states a colorable claim, *Robles v. Coughlin*, 725 F.2d 12 (2d Cir.1983) and will dismiss only if it is "beyond doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972). Towards this end, the jurisdictional question will be analyzed as if Ayala has claimed discriminatory reassignment against both the United States and the superior officers whom Ayala names in his moving papers.

**Government as Defendant**

The United States, as sovereign, is generally immune from suit unless it specifically consents to be sued and such consent is unequivocally expressed. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980); *Keene Corp. v. United States*, 700 F.2d 836, 841 (2d Cir.1983). We are unable to exercise subject matter jurisdiction over Ayala's damage claims against the United States because no such waiver of immunity exists for Ayala's constitutional claims.

The Tucker Act, 28 U.S.C. § 1346(a)(2) and § 1491(a)(2)(1982) might provide Ayala with jurisdiction for an action seeking back pay, as it provides a limited waiver of sovereign immunity for servicemen alleging wrongful discharge from the military. *See, e.g., Sanders v. United States*, 594 F.2d 804, 219 Ct.Cl. 285 (1979). The Act grants jurisdiction to the federal courts to hear money claims against the United States "founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491. Construed in its most favorable light, Ayala's claim might be considered an action for back pay under the Reservists Pay Mandating Statute, 37 U.S.C. § 206 (1982), based on the allegedly wrongful transfer from Class II to Class III Reservist status. However, where the Tucker Act, 28 U.S.C. § 1346(a)(2), does confer concurrent jurisdiction upon the United States district courts and the claims court for such actions based on the Constitution or Acts of Congress for amounts not exceeding $10,000, claims in excess of that amount are within the exclusive jurisdiction of the Court of Claims. 28 U.S.C. § 1491. Here Ayala claims damages in excess of $17,000,000, far outstripping the maximum jurisdictional amount of this court under the Tucker Act. Thus, even if Ayala had properly pleaded a claim for military back pay, his damage claims would be dismissed for lack

of jurisdiction, or transferred to the Claims Court if appropriate. *Crawford v. Cushman,* 531 F.2d 1114, 1126 n. 17 (2d Cir. 1976), *citing Carter v. Seamans,* 411 F.2d 767 (5th Cir.1969) (serviceman's claim for back pay and correction of military records dismissed without prejudice to be pursued in Claims Court since the grant of relief in excess of Tucker Act limit would undermine jurisdiction of the Claims Court).

■ The Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* similarly does not provide jurisdictional basis for Ayala's claim. Although the Act is a general waiver of sovereign immunity for tort claims involving money damages against the United States, the Supreme Court through the *Feres* doctrine established an exception for injuries arising out of the course of activity incident to military service. *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950); *Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977); *Chappell v. Wallace,* 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983) (applying the *Feres* doctrine to bar a *Bivens*-type action against superior officers of military personnel).

While the federal courts do have jurisdiction to review the Constitutionality of prescribed military procedures, *Estep v. United States,* 327 U.S. 114, 120, 66 S.Ct. 423, 426, 90 L.Ed. 567 (1946), Ayala charges a racially discriminatory motive for his change of reservist status, and not the facial unconstitutionality of a particular regulation. *See, e.g., Brown v. Glines,* 444 U.S. 348, 100 S.Ct. 594, 62 L.Ed.2d 540 (1980) (First Amendment attack on Air Force regulation authorizing base commander to regulate circulation of petitions); *Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974) (void for vagueness attack on the Uniform Code of Military Justice); *Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973) (equal protection challenge to military benefit plans for service women).

### Superior Officers as Defendants

■ Even if this court construes Ayala's claim as a suit against his superior officers, federal court jurisdiction is barred by the *Feres* doctrine of intra-military immunity. The Supreme Court's recent decision in *Chappell v. Wallace, supra,* 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 held that military personnel cannot maintain actions against superior officers for violations of their Constitutional rights in the course of military service. Extending the scope of the *Feres* doctrine to suits against specific officers, the Court indicated that a claim founded directly under the Constitution pursuant to *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) was barred by doctrines intra-military immunity. The Court reasoned "Civilian courts must, at the very least, hesitate long before entertaining a suit which asks the court to tamper with the established relationship between enlisted military personnel and their superior officers; that relationship is at the heart of the necessarily unique structure of the Military Establishment." *Chappell v. Wallace, supra,* 462 U.S. at 300, 103 S.Ct. at 2365.

### Administrative Remedies

■ Congress has enacted an intricate scheme of administrative remedies to handle the grievances of military personnel, and these are the appropriate forum for Ayala's claims. The Uniform Code of Military Justice, 10 U.S.C. § 938 provides:

Any member of the armed forces who believes himself wronged by his commanding officer, and who, upon due application to that commanding officer, is refused redress, may complain to any superior commissioned officer, who shall forward the complaint to the officer exercising general court-martial jurisdiction over the officer against whom it is made. The officer exercising general court-martial jurisdiction shall examine into the complaint and take proper measures for redressing the wrong complained of; and he shall, as soon as possible, send to the

Secretary concerning a true statement of that complaint, with the proceedings had thereon.

This statute has been held applicable to the grievances of Marine Corps Reservists, *Schatten v. United States*, 419 F.2d 187 (6th Cir.1969). While a discretionary denial of relief under 10 U.S.C. § 938 is not reviewable in district court, failure to respond to a serviceman's invocation of these procedures or failure to properly follow the procedures set in the statute is reviewable. *Smith v. Resor*, 406 F.2d 141 (2d Cir.1969).

Furthermore, there is a civilian review board, which operates pursuant to 10 U.S.C. § 1552, whose function is to review applications for the presence of an error or injustice and make recommendations for corrective action. The Board for Correction of Naval Records ("BCNR"), composed of civilians appointed by the Secretary of the Navy, is empowered to "correct any military record ... When [the Secretary of the Navy acting through the Board] considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a), *Chappell v. Wallace, supra,* 462 U.S. at 303, 103 S.Ct. at 2367. The BCNR is empowered to grant monetary awards including back pay and can order retroactive promotions. 10 U.S.C. § 1552(c).

Regulations promulgated under the statute offer a broad range of procedural safeguards, including the right to counsel, and a hearing where witnesses and evidence may be presented if the BCNR determines that a hearing is required. 32 C.F.R. §§ 723.2, 723.4, 723.5. The Board's denial of an applicant's claim must be explained fully, 32 C.F.R. § 723.3(e)(5), and an official record of the proceedings must be certified and returned. 32 C.F.R. § 723.6(c).

■ Unlike the remedy afforded under 10 U.S.C. § 938, the proceedings of the BCNR are subject to judicial review and can be overturned if they are arbitrary, capricious, or not based on substantial evidence. *Chappell v. Wallace, supra,* 462 U.S. at 303, 103 S.Ct. at 2367, *citing Grieg v. United States*, 640 F.2d 1261, 226 Ct.Cl. 258 (1981), *cert. denied,* 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982); *Sanders v. United States,* 594 F.2d 804, 219 Ct.Cl. 285 (1979).

■ A serviceman is generally required to exhaust administrative remedies offered by the military before bringing a claim against his superiors in civilian courts. *Diliberti v. Brown,* 583 F.2d 950 (7th Cir. 1978) (vacating lower court injunction against the Secretary of Defense and dismissing complaint for failure to exhaust administrative remedies); *Seepe v. Department of the Navy,* 518 F.2d 760 (6th Cir. 1975) (enlisted Marine Reservist must exhaust BCNR remedies before suit on breach of enlistment contract); *Nelson v. Miller,* 373 F.2d 474, 480 (3d Cir.1967) (exhaustion of remedies required where Board for Correction of military records might obviate the need for judicial review).

■ While failure to exhaust administrative remedies is not always a judicial bar, particularly when the claimant bases his grievance on a Constitutional claim, *Martinez v. Brown,* 449 F.Supp. 207 (N.D.Ca. 1978), such cases typically involve attempts to enjoin dishonorable discharges or Constitutional challenges to the regulation under which the discharge was made. *Schwartz v. Covington,* 341 F.2d 537 (9th Cir.1965); *Downen v. Warner,* 481 F.2d 642 (9th Cir. 1973). The mere presence of a Constitutional claim does not warrant an exception to this requirement that Ayala exhaust his administrative remedies, *Diliberti v. Brown, supra,* 583 F.2d at 952, and the BCNR is empowered to redress claims of Constitutional violations as well as the more routine inquiries into intra-military conflicts. *Bard v. Seamans,* 507 F.2d 765 (10th Cir.1974).

Ayala's claim for damages do not excuse him from first exhausting his administrative remedies. As the Second Circuit stated in *Plano v. Baker,* "A boilerplate claim for damages will not automatically render the administrative remedy inadequate. Where the relief claimed is the only factor that militates against the application of the exhaustion requirement, the complaint

should be carefully scrutinized to insure that the claim for relief was not asserted for the sole purpose of avoiding the exhaustion rule." 504 F.2d 595, 599 (2d Cir. 1974). Here the Board is competent to award back pay and any benefits due, and Ayala's damage claim of $17,000,000 should not form the basis of an exception to the exhaustion requirement.

For the foregoing reasons, Ayala's claims are dismissed pursuant to Federal rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and for failure to exhaust administrative remedies.

IT IS SO ORDERED.