**Gerrald R. ETHEREDGE, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 476–78C.**

United States Claims Court.

Sept. 26, 1985.

Neil B. Kabatchnick, Washington, D.C., for plaintiff. Craig M. Kabatchnick, Washington, D.C., of counsel.

Sharon Y. Eubanks, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, for defendant. Lt. Cmdr. Michael E. Lawlor, Office of Judge Advocate Gen., Dept. of Navy, Washington, D.C., of counsel.

ORDER

STATEMENT OF REASONS PURSUANT TO R.U.S.C.C. 52(a) [1]

NETTESHEIM, Judge.

On March 8, 1985, pursuant to a bench ruling of that date, this matter was remanded to the Board for Correction of Navy Records (the "BCNR"), with directions, *inter alia*, to determine whether it was unlikely that plaintiff would have been promoted on the basis of his Officer Fitness Reports ("OFRs"), in view of the voiding of plaintiff's OFR for the period December 2, 1971, through June 30, 1972. In determining whether plaintiff would have been selected, the BCNR was urged to consider statistics revealing the number and percentage of individuals selected by the selection boards. "A comparison, not reflecting classified or otherwise privileged data, of the rating profiles of those selected with that of plaintiff would be desirable. If one cannot be developed, the BCNR should explain why...." Order entered Mar. 8, 1985, ¶ 3.

In its status report submitted on May 3, 1985, defendant advised that the BCNR had directed the Navy Military Personnel Command (the "NMPC") "to thoroughly and meaningfully review the service records of those with whom plaintiff was competing for promotion during 1975 and 1976." Def's Status Rep. filed May 3, 1985, at 1. The NMPC, according to defendant, further tasked this review to the Navy Supply Systems Command—responsible for assignments and personnel matters relating to TAR (Training and Administration of the Reserves) Supply Corps Officers. Plaintiff had been considered by Reserve (TAR) Supply Corps Lieutenant Commander Selection Boards and competed with three other officers before both the 1975 and 1976 boards.

Ultimately, two TAR officers were given responsibility for preparing an advisory opinion. Defendant's status report submitted on May 3 stated:

These reviewing officers, who are TAR officers themselves, will utilize their expertise in the Supply Corps community to prepare a comparison of the records that they review; make comparisons of OFRs, duty assignments, schools, rankings, and all meaningful career information that a promotion board would consider; and draft a detailed advisory opinion for the BCNR to consider in reaching its decision.

Def's Status Rep. filed May 3, 1985, at 2. Defendant took the position that the proposed procedure complied with the order of remand in that the TAR officers would develop a rating profile. *See* Transcript of May 3, 1985, at 9. The advisory opinion, however, did not provide a rating profile. Although the BCNR did not explain why one could not be developed, it appears that no relative standing statistical data, *see Grieg v. United States*, 226 Ct.Cl. 258, 272, 640 F.2d 1261, 1269 (1981), *cert. denied*, 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982), was available. This explanation is plausible given the small number of competitors and selectees. A review of the record further discloses that any meaningful calculation and comparison of all the officers' average rating scores, *see Hary v. United States*, 223 Ct.Cl. 10, 21, 618 F.2d 704, 710 (1980), or evaluations would have been impossible, because three of the four selected for promotion over plaintiff had significant gaps in service.

On June 4, 1985, defendant moved that the remand period be extended from June 6 to June 28, 1985, indicating that plaintiff's counsel had conditioned his assent to this request on its being granted to August 30, 1985. As grounds for the motion, defendant stated that time had been consumed in excising personnel data in the records to be examined, that the two TAR officers were required to perform their regular duties as recorders for selection boards, and that the

---

**1.** *See Petersen Mfg. Co. v. Central Purchasing, Inc.,* 740 F.2d 1541, 1546 (Fed.Cir.1984). *See also Kosak v. United States,* 465 U.S. 848, ——, n. 4, 104 S.Ct. 1519, 1522 n. 4, 79 L.Ed.2d 860 (1984).

additional time would afford counsel an opportunity to review the advisory opinion. The request was allowed to June 17, 1985. The advisory opinion, a 39-page document evaluating in a narrative analysis the records of plaintiff and all other officers with whom he competed, was rendered on June 5, 1985, and concludes that it would have been unlikely that plaintiff would have been promoted by either board based on his fitness reports, excluding the voided OFR.

On June 10 plaintiff's counsel asked that the remand be extended to July 12, 1985, in order for him to review and comment on the advisory opinion before the BCNR rendered its final decision. This extension was also allowed. Although the remand order provided that plaintiff was to be furnished with the sanitized materials considered by the BCNR, these records were not made available to plaintiff's counsel until after June 26, 1985. By written decision of July 9, 1985, the BCNR adopted the advisory opinion as its analysis and conclusions.

Plaintiff complains that the three-member panel of the BCNR that reviewed and endorsed the views of the advisory opinion was unlawfully constituted. In addition to the Chairman of the Board, W. Dean Pfeiffer, the BCNR panel included Deputy Executive Director Robert D. Zsalman and Senior Attorney Advisor James J. Cross. 10 U.S.C. § 1552(a) (1982), provides in part:

> The Secretary of a military department, under procedures established by him and approved by the Secretary of Defense, and acting *through boards of civilians of the executive part of that military department,* may correct any military record of that department....

(Emphasis added.)

■ By directive dated May 21, 1985, the Secretary of the Navy appointed to the BCNR 40 named individuals, including Mr. Pfeiffer as Chairman. The Secretary designated BCNR staff members Zsalman and Cross "as alternate [panel] members for the limited purpose of replacing any ... member ... unexpectedly prevented from attending a meeting or compelled to leave

the meeting." The statute, however, is clear that the BCNR must render its decisions through Board members, not employees or staff of the Board. *See Proper v. United States,* 139 Ct.Cl. 511, 525, 154 F.Supp. 317, 326 (1957) (quoting statute then in effect which provided that the boards were to be composed of "civilian officers or employees.")

■ It is not necessary to determine whether the exigencies spelled out by the Secretary might justify staff participation in a Board meeting of the BCNR. Defendant does not claim that the appointment of Messrs. Zsalman and Cross occurred when a panel member was "unexpectedly prevented from attending ... or compelled to leave" a meeting. Rather, defendant explains:

> The Chairman determined that the material needed to be reviewed by the board members to reach an informed decision was complex and voluminous. Further, he recognized the need for the board to reach a decision expeditiously because of this Court's order on remand. Additionally, the time consuming process of document review by individual board members would occur during the July 4 holiday period. Mr. Pfeiffer quite reasonably concluded that the availability of regular panel members designated by the Secretary was questionable, at best. Therefore, he determined to utilize the alternate members, who were, of course, properly designated by the Secretary to serve when necessary....

Def's Reply filed Sept. 13, 1985, at 3 (citation omitted). The Declaration of W. Dean Pfeiffer, Sept. 18, 1985, supports defendant's factual assertions, but does not satisfy the criteria of the Secretary of the Navy's directive.

Mr. Pfeiffer does not disclose the date on which the BCNR panel was designated. Defendant's contention that the time-consuming process of document review by individual Board members would occur during the July 4 holiday period is nonsense. The advisory opinion was rendered on June 5, 1985, and the Board's final decision is-

sued on July 9, 1985. It is pure speculation that all of the 40 named members were occupied with Fourth of July festivities during the period exceeding one month from June 5 through July 9, 1985.

Plaintiff's comments on the advisory opinion were submitted on July 1, 1985, and the panel met on July 9. Mr. Pfeiffer did not designate a panel until plaintiff's comments had been received, contending "the case was not ready for review by BCNR...." until that date. Pfeiffer Decl. ¶ 4. Mr. Pfeiffer concluded that "requiring regular members of the BCNR to review the material during this period would not be practical since [he] ... anticipated many of the regular members were likely to be unavailable either to review the materials or for the actual meeting of the BCNR...." *Id.* ¶ 5.

■ This rationale falls by the wayside, because the BCNR is responsible for making its own decision as to the merits of an advisory opinion. Had plaintiff's counsel submitted nothing, the panel was required to satisfy itself that adoption of the advisory opinion was responsive to the order of remand and that the advisory opinion itself represented a disposition of the matter worthy of endorsement by panel members. Certainly, the time between June 5 and July 1 could have been used productively in reviewing the documentary material considered and generated by the two TAR officers. In fact, Mr. Pfeiffer recognized, that the material presented "was quite voluminous and complex," Pfeiffer Decl. ¶ 5, and therefore was on notice of the impropriety a delayed review might cause.

Even if Mr. Pfeiffer reasonably could not have constituted a board until after July 1, 1985, the rationale for using staff members is not persuasive. The BCNR's consideration of the matter arose on remand. This is a matter deserving of special attention. Furthermore, the participation by and availability of BCNR board members is the linchpin of authority for the appointment of

staff. That "many of the regular members were likely to be unavailable either to review the materials or for the actual meeting of BCNR....," Pfeiffer Decl. ¶ 5,[2] over the eight-day period involved still is speculative. To assume that the Fourth of July would impact the likelihood of all 40 members' attendance at a meeting on July 9 stretches credulity.

Defendant's assertions do not justify the appointment of the BCNR staff to this panel under the criteria of the Secretary's Directive, assuming, *arguendo*, that staff could be appointed consistent with the governing statute. Therefore, it is found that the Board was improperly constituted. In these circumstances, defendant takes the position that a remand to the Board is the appropriate remedy, citing *Haber v. United States*, 200 Ct.Cl. 749 (1973).

The review board in *Haber* was faulted for using staff. The United States Court of Claims held that the final determination of the matter on reconsideration should have been made by the review board members themselves because the request for consideration presented new material. "As a matter of law, ... [the failure of the review board to consider this new material] constituted material error which deprives the determination purported to be made by the ... [review board] of all weight, and disentitles it from any acceptance here...." 200 Ct.Cl. at 751. The records of the officers with whom plaintiff competed in 1975–76 in this case were "new material."

■ One of plaintiff's many assignments of error is that on remand defendant should have constituted a special selection board pursuant to 10 U.S.C. § 628(b)(1) (1982), which provides:

In the case of an officer who is eligible for promotion who was considered for selection for promotion by a selection board but was not selected, the Secretary of the military department concerned, un-

---

**2.** It fairly may be observed that the scrutiny employed by the panel did not uncover the failure to sanitize from one of his OFRs the name of an individual who was selected for promotion by the 1976 board.

der regulations prescribed by the Secretary of Defense, *may convene a special selection board* under this subsection ... to determine whether such officer should be recommended for promotion if the Secretary concerned determines that—

(A) the action of the board which considered the officer was contrary to law or involved material error of fact or material administrative error; ...

\*    \*    \*    \*    \*    \*

(2) A special selection board convened under paragraph (1) shall consider the record of the officer as his record, if corrected, would have appeared to the board that considered him. That record shall be compared with the records of a sampling of those officers of the same competitive category who were recommended for promotion, and those officers who were not recommended for promotion, by the board that considered him.

Plaintiff argues that the failure to convene a special selection board was an abuse of discretion because the Departments of the Army and the Air Force regularly employ special selection boards, according to plaintiff, in situations involving Reserve officers. Although the Department of Defense issued a directive encouraging the use of special selection boards, DOD Dir. No. 1320.11 (Nov. 9, 1981), the Secretary of the Navy has determined that a special selection board may be convened under 10 U.S.C. § 628(b)(1) only with respect to officers on the active-duty list. SECNAVINST 1401.1 NMPC–22/Pers–481 ¶ 7a. (Jan. 6, 1982). The statute accorded the Secretary discretion to restrict the use of special selection boards, and it is for the Secretary, not this court, to define his prerogatives. Therefore, the decision not to utilize a special selection board was not an abuse of discretion.

■ Courts are ill-suited to intrude their views into the "inherently subjective" "process of evaluating officers by other officers," *Guy v. United States,* 221 Ct.Cl. 427, 433, 608 F.2d 867, 871 (1979) (discussing the rating process involved in officer efficiency reports), and will not interfere in the "discretionary matters" of ratings and promotions "unless there is a showing of clear error, abuse of discretion, or arbitrary or capricious action." *Tanaka v. United States,* 210 Ct.Cl. 712, 713, 538 F.2d 348 (1976), *cert. denied,* 430 U.S. 955, 97 S.Ct. 1599, 51 L.Ed. 804 (1977) (citations omitted).

■ Plaintiff proffers OFRs from each of the individuals who were considered for promotion to lieutenant commander of the Reserve Supply Corps by the 1975 and 1976 boards. The difficulty of dealing with the matter objectively is highlighted by an analysis of these OFRs. The analysis reveals that plaintiff's record, objectively viewed and without consideration of any of the subjective factors properly considered by selection boards, shows higher evaluations and rating scores for the one-year period immediately preceding each of his first and second passovers than both individuals who were selected over him for promotion in 1975 and one of the individuals in 1976. Since the offending OFR was issued during a period over two years prior to convening the 1975 board, plaintiff's record shows an unwaivering upward trend. However, it is clear that the existence *vel non* of an upward trend in plaintiff's OFRs during the years immediately preceding consideration for promotion was not determinative to the selection boards that passed on plaintiff. The United States Court of Claims instructed in *Brownfield v. United States,* 148 Ct.Cl. 411, 418 (1960), that in the context of promotions "[t]here is no requirement imposed by statute or regulation which restricts the Secretary's review solely to efficiency ratings...." [3] Indeed, the advisory opinion attached significance to the narrative comments in the

---

**3.** *Brownfield* involved review of a determination whether plaintiff had served satisfactorily in a temporary grade at the point of retirement such that he could have been promoted and retired at the higher grade. The quoted statement, however, applies with equal force to promotion procedures in general.

OFRs, difficulty of assignments, number and type of tasks assigned, number of recommendations for accelerated promotion, recommendations for commendations, and commendations received. The advisory opinion's general approach may have been appropriate in the circumstances, but it is the BCNR's task to determine whether that is so and whether it was carried out fairly and reasonably.

## CONCLUSION

■ This matter has been before the Board on remand once. Prior to instituting summary judgment proceedings in this court, plaintiff on five separate occasions between 1975 and 1982 took to the BCNR his complaint about OFRs in his record. Unfortunately, the only resolution that can take place is before the BCNR. This court cannot sit as "sort of super Correction Board." *Reale v. United States*, 208 Ct.Cl. 1010, 1013, 529 F.2d 533, *cert. denied*, 429 U.S. 854, 97 S.Ct. 148, 50 L.Ed.2d 129 (1976).

IT IS ORDERED, as follows:

1. Pursuant to RUSCC 60.1(a)(1), this case is remanded to the BCNR to convene a panel of board members, none of whom has ever served on a panel considering this matter, within five days to review the record in this case as it is presently constituted, including the offending OFR.

2. The BCNR shall answer and provide a discussion with respect to each of the following questions:

a. Was plaintiff's record prejudiced by the voided OFR in the sense that his record was worse than it would have been absent that error?

b. Even if there was some such prejudice, is it unlikely that plaintiff would have been promoted in any event by either of the 1975 and 1976 selection boards? *See Engels v. United States*, 230 Ct.Cl. 465, 470, 678 F.2d 173, 176 (1982). In answering these questions, the BCNR shall address the following:

c. Whether an attempt should be made to compare the average rating scores of Lt.

"B" and plaintiff in that both officers have unbroken service records.

d. What significance, if any, attaches to the fact that plaintiff showed a consistent upward trend in evaluation for the two-year period immediately preceding 1975, compared with declining trends for Lts. "A" and "B."

If the board decides that other factors were more important than evaluations and rating score trends in considering for promotion plaintiff and Lts. "A–D," the basis for such a viewpoint should be set forth with particularity.

3. Since the BCNR has an adequate record before it to make these determinations, no need appears to make any further submission on the part of plaintiff. However, this is not to say that plaintiff's submission of July 1, 1985, should not receive the scrutiny it deserves, especially with respect to its comments concerning any impertinent and unfounded remarks in the advisory opinion.

4. If the BCNR determines that it is not unlikely that plaintiff would have been selected for promotion in the circumstances, the BCNR shall order the appropriate relief.

5. The parties' cross-motions for summary judgment are denied without prejudice to renewal if the case is not disposed of before the BCNR.

6. The Clerk of the Court shall transmit this order to the BCNR. Proceedings in this court are stayed for a period of 30 days from this date. During this stay, the BCNR shall issue and transmit its decision to the Clerk of the Court.

7. Pursuant to RUSCC 1(a)(2), 77.1(a), (b)2, any further proceedings pursuant to RUSCC 60.1(b)(4) shall be conducted on an expedited basis, as follows:

a. The notices required by (b)(4) shall be filed by November 5, 1985;

b. Should either party require further proceedings, that party shall file and serve by hand a renewed motion for judgment in its favor, or a notice that it renews its

earlier briefing without further supplementation, by November 15, 1985;

c. Any opposing brief, or notice that earlier briefing is adopted in lieu thereof, shall be filed and served by hand by November 25, 1985;

d. The final reply brief shall be filed and served by hand by December 2, 1985.

8. Unless waived by both parties, argument will be held at 10:00 a.m. on Friday, December 6, 1985.