**Darel D. VILES, Appellant,**

v.

**William L. BALL, III, Secretary of the Navy.**

No. 88–5149.

United States Court of Appeals, District of Columbia Circuit.

Argued March 10, 1989.

Decided April 18, 1989.

Thomas B. Shull, Washington, D.C., for appellant.

Stephen C. Glassman, Washington, D.C., also entered an appearance for appellant.

Michael J. Ryan, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before STARR, BUCKLEY and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Circuit Judge STEPHEN F. WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

Former Naval Commander Darel D. Viles appeals from a decision of the Board for Correction of Naval Records refusing his requests to delete certain Officer Fitness Reports from his records, to order an appropriate board to reconsider his possible promotion to captain on such a corrected record, and to have any resulting promotion made retroactive. His primary claim is that the Board panel that passed on his case—two regular Board members and a Board staff member sitting as an alternate—was illegally constituted. The claim contains two elements: first, that the "precept" issued by the Secretary of the Navy authorizing the use of alternates violated 10 U.S.C. § 1552(a) (1982), which requires that such boards be composed of civilians; and second, that the appointment of an alternate did not conform to the precept. As a procedural matter, the latter claim takes the form of an argument that the district court abused its discretion by affirming the Board without providing him time for further discovery on the issue. We reject both claims and affirm.

On August 20, 1984 the Secretary of the Navy issued a precept naming 42 civilians as members of the Board. See Precept Convening a Board for Correction of Naval Records, Supplemental Appendix ("S.A.") 69–70. The precept also provided for occasional use of alternates from the Board's staff:

> [T]he Board's Deputy Executive Director, Mr. Robert D. Zsalman and Senior Attorney Advisor, Mr. James J. Cross are appointed as alternate members for the limited purpose of replacing any panel member who is unexpectedly prevent-

ed from attending a meeting or compelled to leave a meeting.

*Id.* at 69. Both designated alternates are civilians.

On October 10, 1984, the day the Board considered Viles's appeal, the three regular panel members included Bruce Herman. See Minutes of Meeting, S.A. at 74. When Viles's petition was presented, Herman recused himself because in June 1984, as Director of the Navy's Military Personnel Evaluations Division, he had prepared and signed an unfavorable advisory opinion on Viles's petition to the Board. Herman Affidavit, S.A. at 77; Herman Memorandum, *id.* at 14–16.[1] Staff attorney Cross was then called to act as an alternate panel member. Affidavit of Board Chairman W. Dean Pfeiffer, S.A. at 72. He and the two regular members unanimously voted to deny the petition.

Viles then sought judicial review. The district court dismissed his action with prejudice, *Viles v. Lehman,* No. 85–0534, (D.D.C. Jan. 16, 1986), but this court remanded the case for it to assess Viles's attacks on the composition of the panel. *Viles v. Lehman,* No. 86–5144 (D.C.Cir. April 10, 1987) (mem.) On reconsideration, the district court affirmed the Board. *Viles v. Lehman,* No. 85–0534, 1988 WL 33507 (D.D.C. Mar. 29, 1988). Viles has appealed once more to this court.

*The Secretary's Precept is Consistent with 10 U.S.C. § 1552.*

■ The statute under which Viles attacks the Secretary's precept, 10 U.S.C. § 1552(a), provides as follows:

> (a) The Secretary of a military department, under procedures established by him and approved by the Secretary of Defense, and *acting through boards of civilians* of the executive part of that military department, may correct any military record of that department when he considers it necessary to correct an error or remove an injustice.... Except when procured by fraud, a correction un-

---

1. We note that the index to the Supplemental Appendix denotes all 68 pages of the administrative record as one item, with no identification of its many specific subparts. This obviously impedes our efforts to find pertinent materials.

der this section is final and conclusive on all officers of the United States.

(Emphasis added.)

Clearly the letter of the statute helps Viles not at all. Nor does its spirit. The Court of Claims has identified the reasoning behind the requirement of civilians as follows:

Since the errors or injustices which might require correction were originally made by the military, Congress made it manifest that the correction of those errors and injustices was to be in the hands of civilians.

*Weiss v. United States,* 408 F.2d 416, 421 (Ct.Cl.1969) (quoting *Proper v. United States,* 154 F.Supp. 317, 326 (Ct.Cl.1957)). As long as a staff member appointed to the Board is a civilian, his appointment does not violate § 1552(a).

Viles nonetheless claims that courts have interpreted § 1552(a) to prohibit staff members from serving on the Board. He relies primarily on *Etheredge v. United States,* 8 Cl.Ct. 736 (1985), where the Claims Court invalidated a Board decision rendered by a panel composed of one regular member and two staff members—the same ones named in the August 20, 1984 precept (Zsalman and Cross). The court found that the appointment of the staff members did "not satisfy the criteria of the Secretary of the Navy's [May 1985] directive," *id.* at 739—criteria which appear from the *Etheredge* opinion to be identical to those of the precept at issue here.

Viles points us to the *Etheredge* court's observation that "[t]he statute, however, is clear that the BCNR must render its decisions through Board members, not employees or staff of the Board." *Id.* This cannot represent a Claims Court position on the validity of the Secretary's precept, for the court immediately thereafter appeared to disclaim any position on the subject: "It is not necessary to determine whether the exigencies spelled out by the Secretary [in the May 1985 precept] might justify staff participation in a Board meeting of the BCNR." *Id.*

Moreover, prior cases analyzing the role of staff in board decisions involved an issue quite distinct from their service as surrogate board members. Rather they addressed staff members' improper exercise of influence in their capacities as board employees. Thus in *Koster v. United States,* 685 F.2d 407 (Ct.Cl.1982), the court assessed (but rejected) a claim that the board's use of staff assistance had represented an unlawful delegation of its "deliberative responsibilities." *Id.* at 414. The court noted that the plaintiff had cited *Werner v. United States,* 642 F.2d 404 (Ct.Cl.1981), in which it had invalidated a decision by the Army Board for Correction of Military Records in part because of the board's reliance on an inaccurate staff memorandum. *Id.* at 408.

Given these prior Court of Claims cases, we think the better understanding of the *Etheredge* dictum is the one articulated by the district court:

The Claims Court's statement ... can be read to mean that staff members, *acting solely as staff members,* may not improperly influence members of the board. However, when these staff members are appointed to a board pursuant to the guidelines set out in the precept, they are no longer staff. They now sit as board members and may properly take part in BCNR decisions.

District Court Opinion, at 4–5 (emphasis in original). We can find nothing in either the statute or the cases to prohibit civilian staff members from serving on the Board under the terms of the precept.

At oral argument Viles's counsel suggested that § 1552(a) incorporated constitutional requirements of separation of administrative functions. If so, the incorporation would add nothing to the constitutional limits. Given those limits' modest nature, see *Withrow v. Larkin,* 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975), we think it most improbable that use of staff members under the precepts would violate them, but as plaintiff did not brief the point we will not address it, *Carducci v. Regan,* 714 F.2d 171, 177 (D.C.Cir.1983).

*The Trial Court Did Not Abuse its Discretion by Dispensing with Further Discovery.*

■ Viles claims that once the district court upheld the precept, it should have

afforded him an opportunity to conduct discovery to determine if Cross's service satisfied its criteria, i.e., whether Herman had been "unexpectedly prevented from attending a meeting or compelled to leave a meeting." (Viles does not claim that Herman's prior knowledge of his own participation in an earlier stage of the proceedings *automatically* defeated the precept's requirement that the triggering event be "unexpected[ ]," and we do not address the point.)

The district court has " 'broad discretion' in its handling of discovery, and its decision to allow or deny discovery is reviewable only for abuse of discretion." *Brune v. Internal Revenue Service*, 861 F.2d 1284, 1288 (D.C.Cir.1988) (quoting *In re Multi–Piece Rim Products Liability Litigation*, 653 F.2d 671, 679 (D.C.Cir.1981)). In this case, the court determined on the basis of affidavits submitted by the Navy that Herman's recusal and Cross's substitution were appropriate. It noted that Viles offered "no countervailing affidavits or any other reason why the Court should not credit the sworn statements." District Court Opinion, at 6.

Viles never made any type of discovery request. He asserts that he failed to initiate discovery because the court expressly adopted a two-stage approach through which it would resolve the legal issue first, followed by a consideration of any factual disputes. Although the court did indicate that the legal question presented a threshold issue, see Transcript of May 15, 1987 Status Hearing 4–5, it never promised the petitioner that he could conduct discovery after its resolution. The court and Viles's attorney had the following exchange:

> THE COURT: Anything further, Mr. Shull?
>
> MR. SHULL: Only to reiterate that should the court decide in the government's favor, we would request an oppor-

tunity to discover whether these facts fit the precept.

> .    .    .    .    .
>
> THE COURT: I think that's clear in your papers, and it would certainly be something I would consider in making my decision.

Transcript of February 2, 1988 Status Hearing 13. While Viles consistently argued that he should be allowed to conduct discovery after the district court decided whether the precept was lawful,[2] that insistence did not turn the district court's silence into a guarantee of a later opportunity.

Under the circumstances we believe the district court could fairly treat plaintiff's counsel as remiss in failing to press ahead with discovery while the parties and court were trying to sort out the applicable legal principles. At the time of Defendant's Response (July 16, 1987), nearly three years had already passed since the Board's disputed meeting of October 10, 1984. Even though that Response contained supporting affidavits and contested the need for further discovery, see Defendant's Response to Plaintiff's Memorandum of Points and Authorities 1–2, plaintiff made no moves toward discovery during the eight months between its filing and the district court order. Memories inevitably grew yet more stale.

A formal request for discovery would not only have protected Viles's interests and made it possible to secure evidence when it was fresh, it would have isolated for the court the issues that allegedly demanded factual resolution. Instead, the record reflects only a generalized desire for further discovery relating to the circumstances of Herman's recusal. In these circumstances, we cannot say that the district court abused its discretion when it affirmed the Board without allowing additional time for discovery.

*    *    *

---

**2.** See Memorandum of Points and Authorities Submitted in Compliance with the Court's Order of May 15, 1987 1 n. 1 ("Should the Defendant prevail on this threshold issue, Plaintiff will seek discovery to determine the exact circum-

stances of the use of Mr. Cross in consideration of Plaintiff's case."); Plaintiff's Reply to Defendant's Response to Plaintiff's Memorandum of Points and Authorities 1–2.

■ Finally, Viles asserts several substantive challenges to the Board's determination. Again, we must affirm the district court. The standard for review of Board judgments is exceptionally deferential:

> To recover for failure to correct an alleged injustice, ... it must be proved that such failure was arbitrary and capricious, or in bad faith, or contrary to law, or without rational basis, seriously prejudicial to plaintiff, and with monetary consequences.... These are comparatively rare cases.

*Sanders v. United States,* 594 F.2d 804, 813 (Ct.Cl.1979).

We will not address Viles's every criticism of the Board's action. We note that they turn largely on questionable characterizations of Officer Fitness Reports placed in Viles's military records. For example, Viles attacks the failure of the evaluating officers to provide discussion of "D" ratings in certain areas of performance, in violation, he says, of regulations requiring discussion of "adverse" material. But under the Navy's system of letter grades ranging from "A" through "I", a "D" is by no means clearly adverse. See S.A. at 29 (interpreting a "D" as reflecting the rating officer's intent to place Viles in the upper 30%). Similarly, Viles claims inconsistency in several reports in that they treat the "trend" of his performance as consistent, while assigning lower grades than he had previously received in some (but by no means all) specific areas. We think the most likely explanation is that the rating officers gave Viles the benefit of the doubt on the inevitably subjective "trend" assessments; this hardly establishes the sort of inconsistency that would require the Board to discard the reports.

Given the nature of his attacks on the reports, it is not surprising that plaintiff has been unable to show prejudice from their inclusion in his record. We see no reason to dispute the finding of the Director of Officer Promotions and Enlisted Advancement Division that "removal of the five fitness reports [contested by Viles] would not have substantially increased the competitiveness of Commander Viles' *overall* performance record." S.A. at 12 (emphasis in original). This finding indicates that any defects in the reports were not of great moment.

The composition of the Board was lawful, and the petitioner presents no evidence that persuades us to overcome the great deference we owe its determination. The decision of the district court is *Affirmed.*