Colonel Charles James DOWDS, United States Marine Corps Reserve, et al., Plaintiffs,

v.

The Honorable George Herbert Walker BUSH, et al., Defendants.

Civ. No. 91–2064 (TAF).

United States District Court, District of Columbia.

May 18, 1992.

William S. Hensley, Jr., Washington, D.C., for plaintiffs.

James R. Layton, Asst. U.S. Atty., for defendants.

## MEMORANDUM OPINION

FLANNERY, District Judge.

This matter comes before the Court on the defendants' ("the government") motion to dismiss. The Court held an oral hearing on this motion on March 16, 1992. Upon careful consideration of the oral argument and the written briefs filed in this matter, for the reasons set forth below, the Court will grant the government's motion.

### Background

The plaintiffs in this suit are eight reserve officers presently or formerly serving in the United States Marine Corps. Each competed for, and subsequently accepted, an active duty position pursuant to the "Full–Time Service" ("FTS") program. FTS was established pursuant to 10 U.S.C. §§ 265 and 672(d), which authorize the Secretary of the Navy ("the Secretary") to assign reserve officers to active duty.

The active duty must be for a specified term of not more than five years. 10 U.S.C. § 679(a). The Secretary may specify the term by written agreement. A Reserve officer may be released from active duty during this term only under certain enumerated circumstances. Upon expiration of the term, it may be renewed.

Each of the plaintiffs signed a written agreement specifying the length of their service in the FTS program. Plaintiffs Dowds, Dau, Slone, and Beland claim that they were induced to sign the agreements by the promise that the FTS term in the agreement would be extended until they

had completed twenty years of service and were therefore eligible for their pension benefits. Their agreements have expired and they have been terminated from FTS status. They seek reinstatement as FTS officers.

Plaintiffs Allen, Horne, Lyman, and Mantis claim that they have been improperly denied promotion opportunities. They seek to have their cases submitted to a special promotion selection board.

Plaintiffs Dowds, Dau, Slone, and Beland

The government argues that the Court lacks jurisdiction over Plaintiffs Dowds, Dau, Slone, and Beland because they have failed to exhaust their administrative remedies. The Board for the Correction of Naval Records ("BCNR" or "the Board") was established to correct errors and remove injustices from the record of a serviceman. 10 U.S.C. § 1552. Subject to certain exceptions, "an aggrieved military officer must first exhaust his administrative remedies before his particular service's Board for Correction of Military Records prior to litigating his claims in a federal court." *Knehans v. Alexander*, 566 F.2d 312, 315 (D.C.Cir.1977), *cert. denied*, 435 U.S. 995, 98 S.Ct. 1646, 56 L.Ed.2d 83 (1978). The government argues that Dowds, Dau, Slone, and Beland have not brought the claims asserted in this action before the BCNR, which could grant them the relief that they seek here; therefore, the government contends that this Court does not presently have jurisdiction to decide their claims.

Plaintiffs Dowds, Dau, Slone, and Beland argue that they have exhausted their administrative remedies. They argue that the Secretary's failure to renew their FTS status is final agency action appealable to this Court.

Specifically, Plaintiffs argue that they did not need to go to the BCNR in order to exhaust their administrative remedies. Plaintiffs Dowds, Dau, Slone, and Beland state that in 1987, a change was made in the FTS program. By directive, the Secretary ordered that lieutenant colonels with fewer than ten years on active duty and colonels with fewer than fifteen years on active duty would not be retained in the FTS program when their FTS term under the agreements then in effect expired. This change in policy—a final agency action—resulted in the agreements of Plaintiffs Dowds, Dau, Slone, and Beland not being renewed. The year after these plaintiffs left the FTS, the plaintiffs assert, the Secretary rescinded the change and returned to the previous system.

The plaintiffs argue that the 1987 change was final agency action, and therefore, no further pursuit of agency action is required. Further, they argue, that the question of whether administrative remedies have been exhausted is not a jurisdictional question, but rather, a question for judicial discretion. Thus, the plaintiffs argue that this issue cannot support a motion to dismiss. Even if the government were correct that further administrative relief were available and that Plaintiffs were required to pursue it, this Court could remand to the administrative body while retaining jurisdiction over this case.

The BCNR is a supplementary remedy available to military personnel. The plaintiffs take the position that the pursuit of this supplementary remedy is not a necessary prerequisite to final agency action. *See Hayes v. Secretary of Defense*, 515 F.2d 668, 675 (D.C.Cir.1975); *Ogden v. Zuckert*, 298 F.2d 312 (D.C.Cir.1961). The plaintiffs dismiss the counter-authority cited by the government, *Knehans, supra*, that a plaintiff must seek relief before the BCNR to exhaust his administrative remedies, as "pure dicta."

The plaintiffs also distinguish *Bois v. Marsh*, 801 F.2d 462 (D.C.Cir.1986), upon which the government relies. *Bois* is inapposite, the plaintiffs argue, because in that case, the plaintiff had raised a new issue for the first time at a judicial proceeding. Having previously not raised the issue in any administrative setting, the court ruled that the plaintiff had not exhausted her administrative remedies. This case is different because an adverse ruling was made by the Secretary on the very issue on which judicial relief is now being sought.

### Plaintiff Dowds

Plaintiff Dowds argues that he has exhausted his administrative remedies even without having sought relief from the Board. Rather than immediately seeking judicial relief from the denial of his request to renew his FTS status based on the 1987 directive of the Secretary, Plaintiff Dowds sought relief from "a whole series of senior officers up the chain of command," eventually obtaining adverse rulings from the Commandant of the Marine Corps and, finally, the Secretary. *Plaintiffs' Opposition* at 13, *citing* Dowds' Affidavit.

Dowds argues that obtaining a ruling from the Secretary constitutes exhaustion of administrative remedies. He relies on several district court opinions, outside of this circuit. For example, Dowds cites *Nicholson v. Rumsfeld*, 425 F.Supp. 780 (N.D.Tex.1977), *rev'd on other grds, Nicholson v. Brown*, 599 F.2d 639 (5th Cir. 1979). In that case, the district court ruled that having obtained an unfavorable ruling from the Secretary of the Air Force, the plaintiff could seek judicial relief without first going to the military board since the board's decision would not have been binding on the secretary.

Dowds argues that the Secretary could have refused to make a ruling in his case until having received a recommendation from the BCNR. The Secretary chose, however, to make a ruling. His ruling is no less final because he chose to make it without first obtaining the advice of the BCNR.

### Plaintiffs Dau, Slone, and Beland

These plaintiffs acknowledge that, unlike Dowds, they have not pursued rulings all the way up the chain of command to the Secretary. While implicitly conceding that they have not, therefore, exhausted their administrative remedies, they argue that they are excused from doing so. They note that there is an exception to the exhaustion doctrine when further pursuit of administrative remedies would be futile. *See, e.g., Kawitt v. United States*, 842 F.2d 951, 953 (7th Cir.1985). Dau, Slone, and Beland argue that once the Secretary denied Dowds' identical claim, it became futile for them to pursue administrative relief for their claims.

### Remedies Must Be Exhausted

■ The first issue is whether Dowds, Dau, Slone, and Beland were required to exhaust their administrative remedies before pursuing judicial relief. Plaintiffs rely heavily on *Ogden* in their argument that they were not. *Ogden* has been considerably narrowed by subsequent case law in this circuit.

Plaintiffs fail to acknowledge the distinction drawn in subsequent cases between efforts to end or avoid military service and efforts to be reinstated into military service. In the former, courts have been less willing to require pursuit of remedies from a military board because during the delay that this causes, the plaintiff is in the military, possibly unlawfully. Thus, the harm caused by the delay can be irreparable. In a situation like the one presented here, however, where the claim is for unlawful exclusion from the military or improper denial of promotion, the delay can be compensated by awarding backpay, seniority, etc. Thus, in this kind of a case, where the delay is less prejudicial, *i.e.*, the damages suffered are not irreparable, courts have required pursuit of remedies within the military. In these cases, the courts' reluctance to interfere with internal military affairs has been paramount.

More than thirty years ago, the *Ogden* court held, over the dissent of then-Judge Burger, that pursuit of relief from a military board is not "a condition to finality of the Secretary's action." *Ogden*, 298 F.2d at 315. The court stated that a decision by the military board might be desirable and the district court may want to remand the issue to that body, but the district court could, in its discretion, retain jurisdiction.

In *Hayes*, fourteen years after *Ogden*, a plaintiff sought his discharge from the army. A unanimous panel noted language from a post-*Ogden* opinion which seemed to call into question *Ogden*'s holding by "implying that generally an application to the Board is a necessary prerequisite to federal judicial review." *Hayes*, 515 F.2d at 674,

*citing Sohm v. Fowler,* 365 F.2d 915 (D.C.Cir.1966). The *Hayes* court found it unnecessary, however, to address whether *Ogden* was still good law. *Ogden* had involved a person disputing his discharge, not a person seeking one. The *Hayes* court noted that where a person's request to be discharged from the military was at stake, "[t]he delay attendant upon a petition to the Board for Correction of Military Records would significantly increase the length of his involuntary servitude without judicial review." *Id.* at 674–75. Therefore, the Court concluded "that once having exhausted his administrative remedy through the chain of command, the appellant may seek relief in the District Court from an adverse decision without first petitioning the Army Board for Correction of Military Records." *Id.*

*Knehans,* the case relied on by the government, like *Ogden,* involved a challenge to a discharge from the military. The plaintiff in *Knehans* "exhausted his administrative remedies by unsuccessfully applying for relief from the Army Board for Corrections of Military Records." *Knehans,* 566 F.2d at 313–314. In concluding that the Board's decision was final agency action, the court noted that ordinarily, military personnel must exhaust their administrative remedies by appearing before the Board prior to seeking judicial relief. *Id.* at 315 (listing *Ogden* as the lone exception in a string of citations).

While the plaintiffs are correct that this observation in *Knehans* was merely dicta since in *Knehans* the plaintiff had sought relief from the military board, plaintiffs fail to acknowledge that this dicta has subsequently been adopted. In *Bois v. Marsh,* then-Judge Starr, speaking for the entire panel on this issue, cited *Knehans* with approval in distinguishing *Hayes* from the case at bar. The plaintiff in *Bois* claimed that she had been the victim of sex discrimination and that this had severely hampered her in her efforts to pursue a military career. *Bois,* 801 F.2d at 463. The *Bois* court held that

> exhaustion might not be required if Bois were challenging her incarceration by the military or ongoing deprivation of

some other liberty interest.... But no such showing of harm has been made here. In sum, we discern no basis for departing from the salutary rule that "an aggrieved officer must first exhaust his administrative remedies with his particular service's Board for Correction of Military Records prior to litigating his claims in federal court."

*Bois v. Marsh,* 801 F.2d at 468, *citing Knehans,* 566 F.2d at 315.

More recently, in *Martin v. Stone,* 759 F.Supp. 19 (D.D.C.1991), Judge Revercomb referred to the situation in *Hayes*—a person seeking discharge from the military—as one of the recognized exceptions to the exhaustion doctrine, *i.e.,* "where an aggrieved plaintiff can show irreparable harm that would justify her failure to exhaust administrative remedies before seeking judicial review." *Id.* at 20. In *Martin,* the plaintiff had been expelled from West Point after a finding that she had cheated. She sought judicial relief without first having sought relief from the Army Board for the Correction of Military Records. Judge Revercomb held that she had therefore not exhausted her administrative remedies and was not entitled to judicial review. "The fact that the plaintiff is falling behind her peers at the Academy during the pendency of her challenge to her separation does not present the kind of irreparable harm that warrants premature review of military personnel actions." *Id.*

In sum, it appears extremely doubtful that *Ogden* is still good law. The *Hayes* distinction between relief sought from a failure to discharge and relief sought from a discharge (or failure to promote) has carried the day. In the former situation, a plaintiff can seek judicial review without first resorting to all of his available administrative remedies. In the latter situation, a plaintiff will not suffer irreparable harm from pursuing administrative relief prior to seeking judicial relief. Therefore, in those cases, pursuit of such relief is a prerequisite to the pursuit of judicial relief. Since the plaintiffs in this case fall into the latter category, they are required to exhaust their administrative remedies.

### Remedies are not Exhausted if Relief Has Not Been Sought from the Board

Having determined that exhaustion of administrative remedies is required, it is necessary to determine what constitutes exhaustion. Dowds argues that because he has pursued relief through the chain of military command, he has exhausted his remedies and he need not pursue relief before the Board. This contention is without merit.

In *Hayes,* the plaintiff had also pursued his remedies through the chain of command. The court held only that this constituted exhaustion in a case where the plaintiff's involuntary servitude was at stake. In *Bois v. Marsh,* the plaintiff had sought relief through the chain of command until eventually obtaining a ruling from the Secretary of the Army. Yet, the court held that she had not exhausted her administrative remedies because she had failed to pursue relief before the appropriate board of military corrections. Likewise, in *Martin v. Stone,* the plaintiff had pursued remedies through the chain of command until she reached the point where the Army failed to act further on her claim.[1] The court ruled, however, that she had not exhausted her remedies since she had failed to seek review before the Army Board for Correction of Military Records.

This line of cases makes clear that when exhaustion is required, it is not complete if relief has not been sought before the Board. Dowds' pursuit of relief through the chain of military command does not constitute exhaustion of administrative remedies. Since Dowds has not exhausted his remedies, it follows that Dau, Slone, and Beland, who admittedly have not even pursued relief through the chain of military command, much less sought relief before the Board, have also failed to exhaust their administrative remedies.

1. The plaintiff had received a ruling from the Superintendent of West Point. She then took her case to the Deputy Assistant Secretary of the Army, who apparently failed to act on it. *Martin v. Stone,* 759 F.Supp. at 20.

2. The plaintiffs argue that the Board does not have the authority to reinstate them. Only the

### Futility Exception Has Not Been Met

■■ As an alternative argument, Plaintiffs Dowds, Dau, Slone, and Beland argue that they should not be required in this case to exhaust their administrative remedies because it would be futile to do so. The conclusion that exhaustion would be futile rests on the fact that Dowds has been unable to obtain any relief through the chain of command.

The argument is that exhaustion should not have been required because, in the wake of the Secretary's ruling in Dowd's case, pursuit of a remedy before the BCNR would have been futile. As an initial matter, it should be noted that in none of the cases discussed above was it held that pursuit of relief before the Board would be futile. In those cases, relief had already been sought through the chain of command and had been denied. The courts did not find that the fact that relief had already been denied through the chain of command meant that it would be futile to seek relief from the Board. Nor have the plaintiffs presented the Court with any reason to believe that it would be futile in this case to pursue remedies before the Board.

Plaintiffs note that the Board is merely an advisory body; the ultimate decision is made by the Secretary. The Secretary has already ruled against Dowds. Thus, the plaintiffs argue that there is no reason to believe he would act any differently if he were called upon again to make a decision on the same issue after the Board had heard the case. This argument ignores that it is the very purpose of the Board to advise the Secretary. There is no reason to believe that the Secretary would simply ignore the advice he receives from the Board. Rather, he could well decide that in light of the Board's review of the case and its recommendations to him that a different result is warranted.[2]

Secretary has this authority and he has already made a decision. This does not change the fact that the Board can advise the Secretary; in fact, that is its function. Exhaustion of administrative remedies is not complete until the Board has heard the case, has provided the Secretary with its recommendations, and the Secretary has acted with the benefit of that advice.

Judge Revercomb squarely rejected a futility argument identical to the one that is advanced by the plaintiffs in this case when it was raised in *Martin v. Stone:*

> [T]he plaintiff asserts that resort to the Board should not be required in this case since the Board would merely be revisiting the issues already considered by the Secretary. Providing agencies with a "useful, second look at an important decision," however, is one of the justifications for the exhaustion requirement. *Kolesa v. Lehman,* 534 F.Supp. 590, 595 (N.D.N.Y.1982).

*Martin v. Stone,* 759 F.Supp. at 21.

In the typical case, absent some reason to believe otherwise, the presumption is that an administrative body will operate as designed and that it will not be futile to seek relief before it. In this case, there is even more reason to believe that the administrative agency is functioning properly and that it is not futile to pursue relief from that body. As discussed below, Plaintiffs Allen, Horne, Lyman, and Mantis have all received relief from the BCNR, despite having been initially denied relief under a ruling by the Secretary. The experience of the second set of plaintiffs, then, provides an illustrative example of the reason why a party should be required to pursue *all* administrative avenues of relief prior to seeking judicial relief.

Each of the plaintiffs is required to exhaust administrative remedies; there has been no showing that it would be futile in this case to enforce that requirement. Plaintiff Dowds has not yet fully pursued administrative relief since he has not gone to the Board. Plaintiffs Dau, Slone, and Beland have not exhausted their administrative avenues of relief because they have not pursued relief through the chain of military command, nor have they sought relief before the Board. Accordingly, the Court agrees with the government that the Court does not presently have jurisdiction over these plaintiffs and that therefore, their case should be dismissed.

**Plaintiffs Allen, Horne, Lyman, and Mantis**

■ The government also argues that this Court lacks jurisdiction over the claims of Plaintiffs Allen, Horne, Lyman, and Mantis. These plaintiffs have already sought and obtained relief from the BCNR. The government states that "they are merely not satisfied with what they obtained." *Gov't Motion to Dismiss* at 9.

Each of these plaintiffs was passed over for promotion in 1990. The promotion decision was made not by comparing these officers to other FTS officers, as had been past practice, but by comparing them to all reserve officers. These plaintiffs went before the Board to argue that the method used for making the promotion decision was in error and that their passover for promotion should be expunged from their records. The Board agreed and granted them this relief.

The plaintiffs additionally asked that a special selection board be convened to reconsider their promotion. The Board declined to grant them this relief, instead deciding that they would simply be sent before the next regularly convened promotion selection board. This happened in August, 1991; each was passed over for promotion at that time.[3] The plaintiffs argue that the result may have been different before a special promotion board since they would have been compared only with other officers in the same class.

The plaintiffs now seek the following: (1) correction of each plaintiff's record to remove all "passovers" for promotion to the next higher rank; (2) "[r]einstitution of Plaintiff Horne ... as a Commissioned Officer in the United States Marine Corps Reserve in active status"; (3) submission of each plaintiff to a "Special Retention/Selection Board" for consideration for FTS active duty assignments; (4) correction of records to reflect no break in active service; and (5) submission of each plaintiff for consideration by special promotion selection boards.

---

**3.** Plaintiff Slone, who had been similarly situated with Plaintiffs Allen, Horne, Lyman, and Mantis, was promoted by the August, 1991 promotions board.

*Id., citing Plaintiffs' Amended Complaint* ¶¶ 30–34. The government characterizes their claim as an argument that the entire system of promotion within the FTS system is arbitrary and capricious.

The government cites several cases for the general proposition that courts should give great deference to internal military decisions. *See e.g., Dilley v. Alexander,* 603 F.2d 914, 919–920 (D.C.Cir.1979) ("Recognizing that it is not the business of the courts to run the military establishments, courts have shown extreme reluctance to interfere with the military's lawful exercise of its discretion over internal management matters.") (citations omitted). The courts will not second guess the military; the discretion of the Secretary of the branch of the service involved is, however, limited by the Constitution, statutes, and regulations. *Id.* at 920.

Plaintiffs Allen, Horne, Lyman, and Mantis sought and were granted relief by the BCNR. Erroneous material (the improper passover) was expunged from their records and they were reconsidered by the "earliest possible selection board convened." *Gov't Motion to Dismiss* at 13, *citing* the administrative records of each of these Plaintiffs.

The government argues that what Plaintiffs Allen, Horne, Lyman, and Mantis seek is for the Court to ignore the administrative relief granted and act as a super military promotions policy review board. The Court should not attempt to play such a role.

> Once a plaintiff has sought relief from the Correction Board, such plaintiff is bound by that board's determination unless he can meet the difficult standard of proof that the Correction Board's decision was illegal because it was arbitrary, or capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which plaintiff has been seriously prejudiced, and money is due.

*Sanders v. United States,* 594 F.2d 804, 811 (Ct.Cl.1979).

Special Boards are Discretionary

A special promotion board, such as the plaintiffs seek, was not ordered by BCNR. In fact, the government argues, it could not have been. Such boards are available only for "officers on the active duty list;" plaintiffs, as reserve officers, do not qualify. *Gov't Motion to Dismiss* at 15, *citing* Department of Defense Directive 1320.11. This Court, the government argues, could do no more than to grant the same relief already provided by the BCNR.

Additionally, the government argues that the regulation that states that special promotion boards can only be convened for regular officers, not reserve officers is not arbitrary or capricious. In all cases, the decision whether or not to convene a special board rests solely within the discretion of the Secretary.

Special selection boards are governed by 10 U.S.C. § 611, *et seq..* Section 628(b)(1) states:

> In the case of an officer who is eligible for promotion who was considered for selection for promotion by a selection board but was not selected, the Secretary of the military department concerned, under regulations prescribed by the Secretary of Defense, may convene a special selection board under this subsection (composed in accordance with section 612 of this title) to determine whether such officer should be recommended for promotion if the Secretary concerned determines that—
>
> (A) the action of the board which considered the officer was contrary to law or involved material error of fact or material administrative error; or
>
> (B) the board did not have before it for its consideration material information.

The plaintiffs concede that the regulations confine special selection boards to active duty officers, but argue that there is no basis in 10 U.S.C. § 628 to support this administrative distinction between regular and reserve officers. Pursuant to 10 U.S.C. § 277, laws applying equally to regulars and reserves must be applied in a nondiscriminatory manner. Thus, Plaintiffs argue that the regulation limiting spe-

cial selection boards to regular officers is invalid.

The government argues that § 628 does not apply to reserve officers. Chapter 36 of Title 10, which includes § 628, is entitled "Promotion, Separation, and Involuntary Retirement of Officers on the Active–Duty List." Section 641(1) specifically excludes FTS officers from coverage under this Chapter. Thus, the government argues that the statutory scheme, as well as the regulation, preclude convening special boards for FTS officers. Indeed, 10 U.S.C. § 5904 specifically states that reserve officers who are erroneously denied promotion should be placed before the next regularly convened selection board. There is no provision to convene special selection boards for reserve officers.

The Court of Claims in *Etheredge v. United States*, 8 Cl.Ct. 736, 741 (1985) interpreted § 628 in the context of Navy's Training and Administration of Reserves ("TAR") program. The TAR program, like FTS, involves officers who are not on the active-duty list. While the statute authorizing special selection boards does not speak in terms of regular or reserve officers, it does use discretionary language, stating that the Secretary *may* convene such boards.

> [T]he Secretary of the Navy has determined that a special selection board may be convened under 10 U.S.C. § 628(b)(1) only with respect to officers on the ac-

tive-duty list. SECNAVINST 1401.1 NMPC–22/Pers–481 P7a (Jan. 6, 1982). The statute accorded the Secretary discretion to restrict the use of special selection boards, and it is therefore for the Secretary, not this court, to define his prerogatives.

*Id.*

The *Etheredge* court implicitly did not adopt the government's current position that by its terms, § 628 applies only to active-duty officers. The Court agrees with the government, however, that the organization of the statutes does support the conclusion that § 628, regarding special selection boards, applies only to active-duty officers. The location of § 628 in Chapter 36 suggests that it applies only to active-duty officers. The existence of a separate chapter, Chapter 549, specifically addressing "Reserve Promotions," would suggest that Chapter 36 is not meant to address reserve promotions.[4] Chapter 549 does not provide for special selection boards. Accordingly, the Court, if it needed to reach this question, would conclude that the only statutory provision for special selection boards is for active-duty officers.[5]

The Court, however, need not resolve the issue of whether § 628, by its terms, applies only to active-duty officers. *Etheredge* explicitly holds, and the Court agrees, that the language of § 628(b)(1) is discretionary. It does not require that special

---

**4.** The Court does not agree with the government that § 5904, located in Chapter 549, addresses the case at bar. Section 5904, which applies only to Naval and Marine Corps reserve officers, does indeed speak in terms of the next regularly convened board, not a special selection board. The problem addressed in Section 5904 relates to officers who were inadvertently not considered by their promotion board, not officers considered and erroneously passed over. The situation addressed in § 5904 is analogous to that addressed in § 628(a)(1). The situation in this case is analogous to § 628(b)(1), *i.e.*, the officers were considered and were erroneously passed over. Chapter 549 does not appear to have an equivalent to § 628(b)(1).

The government is correct, however, that there are no provisions in Chapter 549 for special selection boards. Thus the statutory scheme seems to be: 1) active-duty officers erroneously not considered for promotion shall re-

ceive a special selection board, pursuant to § 628(a)(1); 2) active-duty officers considered, but erroneously passed over may receive a special selection board, pursuant to § 628(b)(1); 3) reserve officers erroneously not considered shall be considered by next regular board and not be considered as having been passed over, pursuant to § 5904; 4) there is no provision for reserve officers considered, but erroneously passed over. There is no general provision for special selection boards for reserve officers.

**5.** The fact that there is no express provision for special selection boards for reserve officers would not necessarily lead to the conclusion that the Secretary cannot convene special selection boards for reserve officers. He may well have the inherent authority to convene such boards. As discussed below, the Secretaries of other branches of the service have provided for special selection boards for reserve officers.

selection boards be convened. Thus, even if § 628 is not meant necessarily to encompass only active-duty officers, if the Secretary chooses to restrict the use of special selection boards to active-duty officers, he may do so.

The Court reaches this conclusion despite the more general language found in § 277. If it were clear on its face that § 628 applied to all officers, the Secretary would be required, pursuant to § 277, to administer § 628 in a non-discriminatory manner. But this is not the case. Section 628 does not provide any right to all officers generally. Rather, it allows the Secretary to convene special selection boards at his discretion. Even assuming *arguendo* that the Secretary may convene special selection boards for reserve officers pursuant to § 628, that section does not compel the Secretary to convene special selection boards for reserve officers. Accordingly, the Secretary's decision not to convene a special selection board in this case is not contrary to law, but rather, a valid exercise of the discretion granted him by statute.

The Court is not persuaded by the plaintiffs' argument that because other branches of the service routinely provide special selection boards for reserve officers that the Secretary of the Navy must likewise provide such boards for reserve officers. The plaintiff in *Etheredge* also argued that because the Air Force and the Army provide such boards, so must the Navy. The *Etheredge* court rejected this argument. The plaintiffs in this case have provided no reason why, given that each Secretary has discretion as to when to convene special selection boards, it is necessary that each Secretary reach the same conclusion, *i.e.,* that special selection boards should be available to reserve officers.[6]

The Court concludes that the Board was correct that, by regulation, it did not have the authority to grant the plaintiffs a special selection board. The Secretary acted within his statutory discretion in promulgating a regulation which restricted the availability of special selection boards to active-duty officers. Plaintiffs Allen, Horne, Lyman, and Mantis have already received all of the relief to which they are entitled by statute and by regulation.

### Remaining Claims

The remaining claims, which are asserted by all of the plaintiffs, do not require much discussion. The plaintiffs have no legitimate constitutional claim. Military personnel are precluded from bringing *Bivens*-type claims against superior officers. *Chappell v. Wallace,* 462 U.S. 296, 304, 103 S.Ct. 2362, 2367, 76 L.Ed.2d 586 (1983). Further, even a civilian could not prevail in on a *Bivens* claim in this case. No individual has been named who is directly responsible for any specific allegedly unconstitutional behavior. The unconstitutional behavior alleged, in order to survive a motion to dismiss, must have been accompanied by unconstitutional intent. None has been alleged in this case.

Plaintiffs' counsel has made sweeping allegations, couched in conspiratorial overtones, that certain unnamed officers have deprived the plaintiffs of constitutional rights; counsel seeks to take discovery in an effort to prove these assertions. The Court declines to sanction a fishing expedition. There have been no concrete allegations of any constitutional deprivation that can survive the motion to dismiss.

### Conclusion

The Court will grant the government's motion to dismiss. The plaintiffs have presented no claims over which the Court presently has jurisdiction and for which relief can be granted. Accordingly, an Order dismissing this case will be filed herewith.

---

**6.** If Congress finds that this disparity of treatment between the branches of the service is objectionable on policy grounds, it has the ability to require uniformity. Indeed, such legislation has been considered. The "Reserve Officer Promotion Management Act," introduced as H.R. 4617, 99th Cong., 2d Sess., 134 Cong.Rec. H464 (1986), would standardize promotion provisions for reserve officers of the different branches of the services. It also would have explicitly provided authority for convening special selection boards for reserve officers. To date, no such legislation has passed. It is not for the Court to read these provisions into the current law. Whether these provisions are desirable is for Congress, not the Court, to decide.

ORDER

This matter came before the Court on the defendants' motion to dismiss. The parties have fully briefed the issues and the Court held an oral hearing on this motion on March 16, 1992. Upon careful consideration of the written and oral arguments of the parties and for the reasons set forth in the Memorandum Opinion filed herewith, it is by the Court this 18th day of May, 1992

ORDERED the motion of the defendants to dismiss be, and hereby is, granted.